## No. 962.

### State of Louisiana vs. Scott Ross.

The verdict of the jury is not illegal and null because written "gulty withoit capitel parnish," when read aloud and distinctly announced by the Clerk as "guilty without capital punishment." Besides, the law does not require, even in cases of capital punishment, that the jury should reduce their verdict to writing.

It is not illegal for the Clerk, instead of the Judge, to propound to the prisoner the question why "sentence of the law should not be passed upon him."

A witness cannot be asked whether the prisoner's pistol was fired off accidentally or on purpose. It is for the jury to draw their conclusion.

The special charge asked for by the prisoner's counsel, that "if there has been any evidence produced on the trial, that the killing of William Henry Anderson by the accused was accidental, then and in that event the jury cannot infer malice from the killing," was illegal and properly refused.

This Court cannot consider any question of fact connected with a Motion for a new trial, even when shown by testimony of witnesses regularly taken in open Court, unless the same is embodied in a Bill of Exceptions to the ruling of the Court below.

APPEAL from the Nineteenth Judicial District Court, parish of Terrebonne. *Goode*, J.

---

Sey. R. Snaer, District Attorney, and L. F. Suthon for the State, Appellee.

Thomas L. Winder for Defendant and Appellant.

---

The opinion of the Court was delivered by

Todd, J. The defendant was indicted for murder, was tried, convicted, and sentenced to imprisonment at hard labor in the Penitentiary for life. From this sentence he has appealed.

He assigns in this Court errors in the proceedings in the words following :

First—"That the verdict rendered by the jury, to wit, 'gulty withoit capitel purnish,' 'signed H. Routh, foreman,' is illegal, null, and void, not authorized by or known to the laws of the State of Louisiana, and does not justify any judgment save that of discharge without day."

Second—"That it was error in the district judge not asking him, the accused, why the sentence of the law should not be pronounced against him. That the clerk of the court being under the constitution and laws purely a ministerial officer, and not clothed with judicial functions, is not warranted in propounding a question such as this, which is necessary in prosecutions of felony."

1st. The law does not require even in capital cases that the jury should reduce their verdict to writing. It is sufficient if it is delivered orally. In this case it is shown by the record that the verdict was written in the words which we have quoted *verbatim* above. That it was handed to the clerk who was directed to read the same. It was read aloud by the clerk to the jury and the verdict distinctly announced as "guilty without capital punishment," and the judge ordered it to be filed and recorded. The jury was then polled on motion of defendant's counsel, and upon the name of each juror being called and asked by the clerk if this was his verdict, each one answered that it was. Even if the writing left in doubt what the verdict of the jury was, which is not very probable, the proceedings connected with the delivery of the verdict, which we have detailed, would certainly remove that doubt, and render it conclusive that the verdict was in accordance with and fully supported the sentence.

2d. Respectable authorities support the position that it is not absolutely essential to the legality of the proceedings that the question embraced in the second ground of error, above referred to, should be propounded to the accused either by the judge or the clerk ; and that its entire omission would not be fatal to the sentence.

28 Georgia, 576 ; 27 Mo. 324.

As to the effect of such entire omission, we are not called upon in this case to decide. The prisoner in this case was asked by the *clerk* "if he had any thing to say why sentence should not be passed upon him in accordance with law."

Bishop in his work on Criminal Procedure declares that this question is properly propounded by the clerk, and we believe this to be the ancient rule on the subject, just as he asks the prisoner on arraignment whether he is guilty or not guilty.

Bishop on Criminal Procedure, 1 v. 118.

3d. The counsel for the accused further urges, that upon the trial of the case a witness for the State was asked upon his cross-examination the following question :

" Was the discharge of Scott Ross's pistol accidental, or did he fire off the same on purpose ?"

That objection was made to this question, and sustained upon the ground urged by the counsel for the State, that it called for the opinion of the witness.

We think the ruling correct. It was the province of the jury to draw the deduction from the facts and circumstances connected with the shooting, as shown by the evidence, whether the shooting was accidental or not, which seems to have been the main, if not the sole, issue in the case upon which the defense relied. To enable the jury to come to a correct conclusion on this point, it was proper that every fact, incident, and circumstance connected therewith should have been proved ; but it was not competent to assist them in their conclusion by showing what the witness thought on the subject before them in their conclusion on this point. The question was clearly objectionable. 1 Greenleaf, 440 ; 7 R. 451 ; 13 A. 45 ; 21 A. 726 ; 27 A. 316, 392.

4th. Another alleged error complained of was the refusal of the judge to give this special charge asked for, viz.:

" If there has been any evidence produced on the trial that the killing of William Henry Anderson by the accused was accidental, then and in that event the jury cannot infer malice from the killing."

The court properly refused to give this charge. The accused was indicted for murder. An essential ingredient in that crime is malice. To charge as asked for would have been virtually to instruct the jury to believe any evidence produced on the trial that would show that the killing was accidental, and acquit the prisoner of murder, since without malice there could be no murder.

Besides, this evidence, if there was any such, might have been evidence, in the estimation of the jury, unworthy of credit, and the charge asked for was calculated to deny or restrict their clear right to judge of the credibility of evidence before them, and to accept or reject it as it might or might not commend itself to their confidence and belief.

The jury are the sole judges of the facts in criminal trials. It is their right and duty to consider all the facts before them having any bearing on the guilt or innocence of the accused. The charge in question would have drawn them from this broad field of investigation, and narrowed their inquiries to a single point. The charge asked for was clearly objectionable.

5th. A motion for a new trial was made, and refused by the lower court. The only complaint made here connected with this ruling is that

General Lyons, one of the jurors who tried the case, was incompetent, for the alleged reason that he had before the trial formed and expressed an opinion in relation to the guilt or innocence of the accused ; but had sworn when examined on his *voir dire* that he had formed no such opinion.

Whether or not the alleged fact was established in the court below to the satisfaction of the judge, the record is silent. The only evidence we have of it is an *ex parte* affidavit of one Harry Hays Cage, made before a notary public, which appears in the record. Such evidence was inadmissible, even in the court *a qua*, to establish any fact. It is of course far less satisfactory than evidence taken contradictorily between the parties in open court. Yet to such an extent does the constitutional inhibition on the powers of this Court to take cognizance of questions of fact in criminal cases go, that we have recently held, in case of the State vs. Nelson, that this Court cannot consider any question of fact connected with a motion for a new trial, even when shown by testimony of witnesses regularly taken in open Court, unless the same is embodied in a bill of exception to the ruling of the Court.

The counsel for the accused refers us to the case of the State vs. Gunter, 30 An. 536, in which Judge Egan, as the organ of the Court, intimates that the Court might take cognizance of a fact connected with any incidental matter in a criminal case if brought to their attention by an affidavit. This was clearly an *obiter*, and we do not regard it as law.

We see no error in the proceedings to entitle the accused to relief.

The judgment of the lower court is therefore affirmed.