BRANTLEY *v.* THE STATE.

1. On a trial for assault with intent to murder, by shooting, where neither the evidence nor the prisoner's statement supports a theory that the defendant shot under the fears of a reasonable man that a felony, or other like injury, was about to be committed on him, a charge concerning such fears was properly omitted; nor was it error, in such a case, to charge that there must have been a necessity for the shooting by the defendant at the time he fired to render the shooting justifiable.

2. It was not error to charge the jury that they should not be controlled, in making up their verdict, by any fear as to what the punishment might be, but that they were sworn to find according to the evidence.

3. The infliction of a penalty not authorized by law is no ground for a new trial.

4. When the jury return a verdict which is not in the proper form, it is not error for the court to allow them to put it in the proper form, or, at their request, to have the solicitor-general do so for them, they unanimously stating that the verdict as formulated by him is their real finding.

April 20, 1891.

Criminal law. Shooting at another. Reasonable fears. Charge of court. Punishment. Practice. Verdict. Before Judge GOBER. Douglas superior court. July term, 1890.

Brantley was indicted for assault with intent to murder, alleged to have been committed upon Duke by

shooting him. He was found guilty of shooting at another "not under circumstances of justification as charged in the indictment." He moved for a new trial on the following among other grounds:

(1) After the jury had remained out all night and requested a further charge as to the "law of shooting," the court charged: "If you find that this defendant shot at Duke, if you believe that from the evidence, there must have been a necessity for that shooting at the time the shot was fired. I charge you, if there had been provocation before that, but Brantley was not in danger at the time, and that subsequent to the provocation there had been an interval sufficient for the voice of reason and humanity to have been heard, he could not have followed Duke up and shot at him afterwards, if you believe these are the facts from the evidence. As to how the facts are you must say. After an interval of time has elapsed, a man would have no right to follow another up and use a deadly weapon on him for revenge, for something done before that. Now as to how the facts are you must say. There must have been a necessity for a man to use a deadly weapon." This charge was erroneous in that it did not give the defendant's theory of the case, and because the court said nothing of reasonable fears such as the circumstances might create in the mind of the defendant.

(2) The court charged: "I charge you that you have nothing to do with the punishment in this case. A man who would find a verdict one way or the other, or determine a case either one way or the other, by reason of the punishment in the case, it being either more or less one way or the other, is not fit to sit on the jury. You came here as men sworn to find this case according to the evidence. It is about that you did the swearing; somebody else does the swearing in reference to the punishment, and you have nothing to

do with that in determining upon your verdict as to what your verdict will be; you can't find one verdict or another by reason of fear as to what the punishment will be; you stick to your oath, and that is all you have to do with it." The error alleged is, that this charge was calculated to mislead the jury and was without request and contrary to law.

(3) Stated in the third part of the opinion.

(4) The jury returned this verdict: "We, the jury, find the defendant guilty of the offence of shooting, and we recommend the mercy of the court." The court declined to receive the verdict and refused to order the discharge of the prisoner on it, but instructed the jury to return to their room and bring the verdict back in form, telling them what the form should be if they proposed to find him guilty of shooting at another, and that if they intended to acquit him they should find a verdict of not guilty. When the jury returned they brought in this verdict: "We, the jury, find the defendant guilty of shooting at another and not of the offence that he was charged with in the bill of indictment, and recommend mercy." The court again refused to discharge the prisoner. (In a note to this ground the judge states: He told the jury their verdict was not in any form he had given them; and the foreman at once said that they intended to find the defendant guilty of shooting at another, but could not remember the form the court gave them. The court gave them the form again, and told them they could go back to their room and put the verdict in form, or, if they wished, they could do it in their box. They all said they intended to find the defendant guilty of shooting at another; and the court told them then they could either put it in form themselves, or they could have the solicitor-general to write it for them. They said they preferred to have him do it for them; he wrote

it out, the foreman signed it, and the jury was polled and each and all answered it was their verdict.) The defendant assigns this as error, and says that it was his right to have the verdict agreed to by the jury in their room in secret and not in the presence of the court, and that it was error in the court to permit the jury to remain in their box to write and sign their verdict, or to have the solicitor-general write it, and permit this done in open court. The second verdict, he says, was an acquittal and he should have been discharged thereon.

THOS. W. LATHAM, for plaintiff in error.

J. S. CANDLER, solicitor-general, and B. H. LEE, *contra.*

LUMPKIN, Justice.

Duke, the prosecutor, and Brantley, the defendant, had a quarrel in the forenoon about a dog, which resulted in nothing serious. That night, while Brantley was in a store in the town of Douglasville, having with him a shot-gun with which he had been hunting in the afternoon, Duke appeared on the scene and fired at him with a pistol, inflicting a severe wound. Brantley immediately returned the fire with his gun. By reason of the firing of the gun, the light in the store was extinguished, and both parties disappeared from the store in the dark, and went down the street. A very short time thereafter, Duke was shot by Brantley in an adjacent alley running out from this street. The evidence does not show clearly the circumstances under which Duke was shot in the alley. That for the State tended to show that Duke was fleeing from Brantley, had fallen over some barrels or boxes, and was shot while in this position. According to the prisoner's statement, Duke went into the alley for the purpose of waylaying him, shot at him as he came up, and he immediately returned the fire in self-defence. It seems clear from the testimony that in the shooting which occurred at

the store, Brantley was without fault, and Duke was to blame. If Brantley was guilty of any offence at all, it was because his shooting Duke in the alley was unlawful. He either shot a fleeing and helpless adversary without necessity, which would, of course, have been unlawful, or he shot in self-defence, which would have been justifiable. The theory of self-defence was supported by the prisoner's statement alone. The jury evidently disregarded this statement, and found the defendant guilty of shooting at another on the strength of the evidence above mentioned.

1. From the foregoing recital, it will appear that neither the evidence nor the prisoner's statement put in issue the question, whether or not the defendant shot Duke while in the alley under the fear that Duke was *about* to shoot or otherwise assault him. If the shooting by Brantley in the alley was justifiable at all, it was upon the doctrine of *actual* self-defence. The prisoner does not contend in his statement that he shot because he was afraid Duke was *about* to attack him, but alleges that Duke actually *did* fire at him, and that, under the immediate and pressing danger, he shot to save his life, or to prevent the perpetration upon him of an injury amounting to a felony. The court, in his charge to the jury, gave the defendant the full benefit of the theory presented by his own statement, and in view of the evidence and this statement, did not err in omitting to charge the law concerning reasonable fears; and it follows, of course. that it was proper for the court to charge that, in order to justify the defendant, there must have been a necessity for him to shoot at the time he actually fired.

2. While under the code the jury have the right in all criminal cases to recommend the prisoner to the mercy of the court, and it is the duty of the court to pay proper respect to such recommendation, still, the

question of what the punishment may be ought never to affect the jury in deciding the naked question, whether the defendant is guilty or not guilty of the charge made against him. If they respect their oaths, they must follow the evidence, giving such weight to the prisoner's statement, also, as they see proper ; and in every case, fairly and honestly determine whether or not the guilt of the accused has been established beyond a reasonable doubt. In discharging this duty, they cannot be aided, and should not be influenced, by any consideration as to what punishment will be inflicted by the court. When they determine that the prisoner is guilty, they may recommend mercy, and the law says the court should respect such a recommendation ; but what punishment will be inflicted can in no sense aid the jury in determining the guilt or innocence of the prisoner.

3. The punishment provided by our code for the offence of shooting at another shall be by fine, imprisonment in the common jail, or both, or by confinement in the penitentiary. The court, in this case, sentenced the defendant to pay a fine of $250.00, or, in default thereof, that he be confined in the penitentiary for eighteen months. One of the grounds of the motion for a new trial assigns this sentence as error, but the sentence itself was not directly excepted to in the bill of exceptions. The question not being properly before us, we do not decide whether this penalty was illegal or not ; but granting, for the sake of the argument, that it was so, it certainly affords no ground for a new trial. If the trial was in all respects regular and the verdict right, it would never do to set it aside and order a new hearing of the whole case simply because the court inflicted a penalty which he had no authority of law to impose. If the sentence was unlawful, the defendant should have directly excepted to it and brought the question to this court for review ; or, it may be, he

could relieve himself from such unlawful sentence by writ of *habeas corpus.*

4. It is perfectly clear from the record in this case that the jury meant and intended to find the defendant guilty of the offence of shooting at another, not in his own defence. They made two or three efforts to express their finidng in writing, but used language which, in the opinion of the court, failed to do so with sufficient accuracy. It was certainly not error, therefore, for the court to require them to put the verdict in such form as to make its meaning entirely clear and free from objection, or to allow the solicitor-general, at the request of the jury, to frame their verdict for them. Neither the judge nor the solicitor-general made the verdict; the jury stated repeatedly and unmistakably what they desired to find; and after the finding was put in proper shape, they ratified and approved of it, and then, upon being polled, each and every member of the jury answered that such was his verdict. Of course, no court should ever intimate to a jury what their verdict should be; but when they agree upon one, and all present know exactly what they mean to find, it is mere trifling to say that the judge may not aid them in expressing their finding in legal phraseology.

*Judgment affirmed.*