(67 South. 13)

No. 20809.

STATE v. HIGHTOWER.

(Nov. 16, 1914. Rehearing Denied Jan. 11, 1915.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⬤═888, 971 — VERDICT — SUFFICIENCY—ARREST OF JUDGMENT.

Where, in a prosecution for murder, it appears that the jury returned into the court for the rendition of its verdict, that the foreman announced, verbally, "manslaughter," that the clerk of court thereupon announced, "We, the jury, find the accused guilty of manslaughter," and that the jury was then polled, with respect to the verdict as thus announced by the clerk, with the result that each of the jurors declared it to be his verdict, no sufficient ground is shown for sustaining a motion in arrest of judgment, for where the intention of the jury is obvious, but imperfectly expressed, the verdict may be reduced to proper form by an officer of the court, in open court, and in presence of the jury, and affirmed, as thus perfected, by the polling of the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2109–2112, 2463–2468; Dec. Dig. ⬤═888, 971.]

2. HOMICIDE ⬤═300 — INSTRUCTIONS—SELF-DEFENSE.

The charge, "If the accused believed, and had reasonable ground to believe, at the time she fired the shot, that her life was in danger, or that she was in danger of receiving serious bodily harm, then she was justified in acting in self-defense, even to the extent of taking the life of her adversary," is sufficient, without the addition of such words as "although the apprehended danger was not, in fact, real," or their equivalents.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. ⬤═300.]

3. CRIMINAL LAW ⬤═945 — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

Where alleged newly discovered evidence, when compared with facts established and admissions made by the accused, in a prosecution for murder, could not reasonably be expected to change the result, a motion for new trial is properly overruled.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2324–2327, 2336; Dec. Dig. ⬤═945.]

Appeal from Sixth Judicial District Court, Parish of Morehouse; Ben C. Dawkins, Judge.

Annie Hightower was convicted of manslaughter, and, from a judgment sustaining a motion in arrest of judgment and remanding the case for further trial, the State appeals. Reversed and remanded.

R. G. Pleasant, Atty. Gen., and Fred M. Odom, Dist. Atty., of Bastrop (G. A. Gondran, of New Orleans, of counsel), for the State. W. H. Todd, of Bastrop, T. H. McGregor, of Rayville, and T. C. Newton, of Bastrop, for appellee.

MONROE, C. J. The state has appealed from a judgment sustaining a motion in arrest of judgment and remanding the case for further trial.

[1] 1. The basis of the motion in arrest is to be found in the following excerpt from the minutes:

"Whereupon the jury came into court and presented, through their foreman, the following verdict, to wit: 'Manslaughter.' Whereupon the clerk announced, 'We, the jury, find the accused guilty of manslaughter,' and, upon polling the jury, asked each one of the jurors if that was his verdict, and he was answered that it was."

The contention of defendant's counsel is:

"That the verdict was meaningless and fatally defective, and not responsive to the indictment, for the reason that, when the jury returned to render the verdict, the foreman announced, 'Manslaughter,' and never stated, nor was it shown, that their intention was to find the accused 'guilty of manslaughter.'"

Defendant was prosecuted for murder, and, if the jury had not intended to convict her of manslaughter, the use of that word by the foreman, in making his verbal announcement of the verdict, would, indeed, have been irrelevant and meaningless.

Beyond that, however, there is error in the motion in arrest in the statement, "Nor was it shown that their intention was to find the accused guilty of manslaughter," for, as we have seen, the word "manslaughter," as used by the foreman of the jury, was interpreted by the clerk, in his announcement, to mean, "We, the jury, find the accused guilty of manslaughter," and, the jury having been

polled, each of them answered that that was his verdict. And, in that respect, the case differs from State v. Johnson, 46 La. Ann. 5, 14 South. 295, in which there was the written verdict, "Manslaughter" (signed by the foreman), and the jurors were asked if that was their verdict, so that, though there was opportunity for explanation, none was given, and the court had before it nothing but the bare word "manslaughter," with no language to indicate the intention of the jury as to its application.

There is ample authority for the proposition that when the intention of the jury is obvious, but badly expressed, the judge may direct the district attorney to put it in proper form, in open court, and that it may then be affirmed by the jury. Pool v. State, 87 Ga. 526, 13 S. E. 556; Brantley v. State, 87 Ga. 149, 13 S. E. 257; State v. Davis, 31 W. Va. 390, 7 S. E. 24; 12 Cyc. 699 (3); Clark's Cr. Pr. verbo "Verdict," p. 483.

In State v. Scott Ross, 32 La. Ann. 854, the jury brought in a written verdict reading, "Guilty without capital punish," which the clerk interpreted, in announcing, as, "Guilty without capital punishment," after which the jury was polled and each juror answered that the verdict, as thus announced, was his verdict, and the court held that:

"Even if the writing left in doubt what the verdict was, which was not very probable, the proceedings connected with the delivery of the verdict * * * would certainly remove that doubt."

And in State v. Smith, 33 La. Ann. 1416, where the jury brought in a verdict reading, "We, the jury, find Watkins guilty of mansluder," to which a member of the jury had affixed the name "Ja. Washington" as that of the foreman, who was unable to write or sign his name, and whose name was Jiles Washington, the court said:

"There is no law which requires the appointment of a foreman and verdicts to be in writing. Verdicts may be delivered orally. Polling the jury regularizes the proceedings."

We are therefore of opinion that the trial judge erred in sustaining the motion in arrest.

[2] 2. When the judgment sustaining that motion was rendered (and signed), the state and the defendant were each granted an appeal, and defendant now avails herself of the appeal granted to her by challenging the trial court's action in overruling her bills of exception to its refusal to give a special charge and to grant a new trial.

The bill first mentioned reads, in part:

"It having been proven on the trial that the deceased had threatened to take the life of the accused, and was, at the time of the homicide, over on the premises of the accused, just outside of the fence, counsel for the accused asked the court to make the following charge to the jury: If a defendant had reason to believe that his life is in danger of receiving great bodily harm, he is justified in doing whatever he deems necessary to prevent this danger or loss of life, even though the danger is not real."

The statement, per curiam, incorporated in the bill, reads:

"The court had already charged that if the accused believed, and had reasonable grounds to believe, at the time, if she fired the shot, that her life was in danger of great bodily harm, then she was justified in acting in self-defense, even to the extent of taking the life of her adversary."

We assume that both the requested and the given charges have been somewhat mutilated in the transcription, and that the requested charge should read:

If a defendant has reason to believe that his life is in danger or that he is in danger of receiving great bodily harm, he is justifiable in doing whatever he deems necessary to prevent the danger or loss of life, even though the danger is not real.

And that the given charge should read:

If the accused believed and had reasonable ground to believe, at the time that she fired the shot, that her life was in danger, or that she was in danger of receiving serious bodily harm, then she was justified in acting in self-defense, even to the extent of taking the life of her adversary.

And, so interpreting them, we are of opinion that the given charge is to be preferred,

since, in order to justify the taking of human life, there should not only be reasonable ground for belief in the threatened danger, but the jury should be satisfied that the slayer acted in such belief, a point covered by the given charge, of which the defendant would appear to have but little reason to complain, since, standing alone, it is open to the interpretation that one who believes, or has reasonable ground to believe, that his life is in danger, or that he is in danger of receiving great bodily harm, thereby acquires the right to take the life of another, which is not the law. State v. King, 22 La. Ann. 454. The words "even though the danger is not real," which were requested by the defendant, or their equivalents are not unfrequently added to the charges given in such cases, but we are unable to say that they would have added anything to the meaning of the charge as here given, and we therefore hold that there was no reversible error in the ruling complained of.

[3] 3. The second bill was reserved to the overruling of a motion for new trial; the ground relied on being that, on the morning after the conviction, there had been found, imbedded in the mud of a creek bottom, at the point where deceased fell into the creek, when shot, a pistol, "which must have been in the hand of the deceased at that time, or it could not have been there found."

The court's addition to the bill reads, in part, as follows:

"The court was of the opinion that, even if the alleged newly discovered evidence had gone before the jury, it would not have changed their verdict (the accused having sworn that she saw no weapon); that deceased's hands were in a position that she could not see them, although she swore that he was coming towards her, in a physical situation received [understood] by the jury and the court, where it was practically impossible for him to have done so, and in view of the further fact that he was shot in the side of the back, under the left shoulder, diagonally through the body."

To the statement of the judge, we may add that the bill of exception does not state that the pistol therein mentioned was loaded when found.

For the reasons thus assigned, it is ordered that the judgment appealed from, sustaining the motion in arrest, be set aside, and that the case be remanded to be further proceeded with according to law and to the views expressed in the foregoing opinion.