*851
 
 ST. PAUL, J.
 

 The accused was convicted, of manslaughter. His appeal presents only-two points, which, for convenience, we consider in reverse order to wit:
 

 I.
 

 He moved (1) for a
 
 new trial
 
 on the usual perfunctory ground that the verdict was contrary to the evidence, with which, of course, we have nothing to do; and (2) that the prosecution against him be dismissed (substantially,
 
 in a'i'rest of judgment)
 
 on the ground that
 
 the deceased
 
 (not the accused himself) was under the age of 17 years, and the juvenile court,
 
 not
 
 the district court, had jurisdiction over the offense with which he was charged [to wit,
 
 manslaughter,
 
 an offense punishable by imprisonment at
 
 hard labor.
 
 Section 786, R. S. 1870].
 

 II.
 

 Here are the provisions of the Constitution fixing the jurisdiction of the two courts, viz.:
 

 (a) “They [the district courts] shall have unlimited and exclusive original jurisdiction in all criminal cases, except such as may be vested in other courts authorized by this Constitution. * * * » Const. 1921, art. 7, § 35, par. 4, p. 49.
 

 (b) “The said [juvenile] courts shall have jurisdiction, except for capital crimes and assault with intent to commit rape, of the trial of all children under 17 years of age who may be charged in said courts as neglected or delinquent children,
 
 and
 
 of all persons charged with contributing to such neglect or delinquency, or with a violation of any law now in existence or hereafter enacted for the protection of the physical, moral or mental well-being of children,
 
 not punishable by death or hard labor,
 
 and also in all cases of desertion or nonsupport of children by either parent.” (Italics ours.) Const. 1921, art. 7, § 52, par. 4, p. 54.
 

 These provisions
 
 need
 
 no interpretation; their meaning may be grasped at a glance. But we are pleased that the defendant has made the point, as it affords us opportunity to lay these parts of the Constitution before those who may not have read them. And thus
 
 this
 
 case, and State v. Malone, 156 La. 617, 100 So. 788, will (or should) suffice for a clear understanding of the
 
 purpose
 
 and jurisdiction of the juvenile courts of this state.
 

 Defendant moved to quash the
 
 array
 
 of petit jurors summoned for his trial. 1-Iis complaint is: (1) that the chief deputy clerk, and not the clerk of court himself, acted as one of the jury commission in preparing the
 
 list
 
 of jurors put into the jury box from. Which the
 
 panel
 
 was drawn, and in the
 
 drawing
 
 of said panel from the jury box; (2) that, in any event, a panel regularly and properly drawn, and out of which the- jury to try him should have been selected, was irregularly and ex 'proprio motu quashed by the judge, and the jury commissioners directed to summon a
 
 new
 
 panel, which then became the array which he now moved to quash; and (3) of certain
 
 alleged
 
 irregularities in preparing the list of jurors put into the jury box.
 

 (1) To the
 
 first
 
 objection it suffices to say, that by section 3 of Act 135 of 1898 the chief deputy clerk of court becomes ex officio a member of the jury commission “in case of the inability of said clerk [himself] to act,
 
 for any cause”
 
 (italics ours); and the evidence shows that the clerk of court
 
 was
 
 unable to act because of illness. And moreover, Act 220 of 1902 expressly provides that
 
 any
 
 deputy clerk
 
 “shall
 
 exercise
 
 all
 
 the powers granted to clerks; * * * except such
 
 judicial powers
 
 as are herein or may be hereafter granted, * * * which shall belong to the clerk alone, and to the chief deputy clerk when the clerk * * * from any cause is unable to act. * * * ” (Italics ours.) Quid multa? See State v. Reeves, 56 So. 648, 129. La. 714, and cases there cited.
 

 (2) The deputy clerk, having some doubts as to the regularity of the
 
 first
 
 drawing because of one of the jury commissioners not having been
 
 notified
 
 in time,, and
 
 for that reason
 
 not having been present, laid the matter before the judge, who_ thereupon concluded (correctly) that the panel would have to be discharged, if challenged. See State v. White, 95 So. 776, 153 La. 300. Accordingly
 
 *853
 
 lie
 
 properly
 
 quashed the panel ex proprio motu and ordered a new panel drawn. For it would he absurd
 
 and improper
 
 for a judge, knowing that a panel of jurors
 
 must
 
 be discharged if challenged, to waste the court’s time and the people’s money
 
 waiting
 
 for the challenge which he knows he must sustain.
 

 But even had the judge erred in discharging the panel, it would still avail the defendant nothing; for “parties have no right to a trial by any particular juror or jurors, but only to a trial by a competent and impartial jury.” State v. Bagwell, 98 So. 549, 154 La. 980; State v. Carricut, 102 So. 98, 157 La. 140. And hence, “the complaint which the defendant makes could, if sustained, lead only to the submission of his case to another grand [petit] jury, and yet any other grand [petit] jury which might be chosen would be obnoxious to the same objection which he makes to the grand [petit] jury by which he was indicted [tried] to wit, that it was not chosen from the venire * * * set aside by order of the court.” State v. Kellogg, 29 So. 285, 104 La. 580. So that if defendant’s complaint is
 
 now
 
 well founded, it will be well founded at all times in the future, and thus he can
 
 never
 
 be tried for the offense with which he is charged. But we do not apprehend that even the defendant would contend that the order of the district judge discharging the
 
 first
 
 panel drawn operated as a perpetual bar to any further prosecution of the case against him.
 

 (9) The irregularity complained of in preparing the list of jurors put into the jury box from which the
 
 new
 
 panel was drawn is that in filling the general venire jury box to the number of 300 good and lawful jurors, as required by law, the jury commissioners (who had just filled that box at the time the
 
 first
 
 panel was drawn, some 10 days before) “dumped” back into the jury box, before drawing the
 
 'new
 
 panel, the names of all those who had been drawn for the
 
 first
 
 panel, which the judge had quashed (some three score names).
 

 The objection is devoid of all merit. In State v. Batson, 32 So. 478, 480, 108 La. 479, 485, this court said:
 

 “It is objected on behalf of the defense that the selection thus made was not original, but that the' commissioners merely
 
 supplemented
 
 a selection, which had previously been made, of jurors whose names were already in the box, so as to bring the number up to that required by the act of 1898. Assuming this to be true, * * * the objection is not well founded; there being neither allegation nor proof that the names in the box were not those of competent, good, and true men, qualified under the act of 1898 to serve as jurors, and the mere fact that their names were [already] in the box not disqualifying them or affording any reason why they should not be selected.”
 

 Of which we may say to
 
 this
 
 case: Mutato nomine [et mutatis mutandis] de te- tabula narratur. Of which a (very) “liberal translation” would be:
 
 It fits like a glove;
 
 in other words, it is absolutely a “goose case” for this one. See Taylor v. Allen, 91 So. 635, 648, 151 La. 82, 119.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.