HAWTHORNE, Justice.
 

 The defendant, Doug McLean, was indicted for the crime of manslaughter, tried, convicted of negligent homicide, and sentenced to serve three years in the penitentiary.
 

 In this appeal defendant relies on numerous bills of exception reserved in the proceedings in the lower court, which we shall discuss in their numerical order.
 

 Bill of Exception No. 1.
 

 Bill of Exception No. 1 was taken to the ruling of the trial judge refusing to quash the petit and tales juries selected for the term of court in which defendant was tried. . This motion to quash is based on the grounds (1) that the district judge, of his own motion and without any cause or excuse, by order dated September 9, 1946, annulled, rescinded, and set aside a previous order entered by the court on July 20, 1946, in which previous order the jury commission for Jackson Parish was ordered to convene on August 7, 1946, to-select a grand jury panel from which a grand jury was to be drawn to convene on Monday, September 9, 1946, to draw a petit jury to serve the week beginning October 14, 1946, and to select 100 tales jurors whose names would be placed in the tales jury box, and (2) that the jury commissioners were not notified in the manner and by the method required by law of the meeting of said commission held on September 11, 1946, which jury commission selected and drew the grand jury, petit jury, and tales jury to serve for the term of court in which defendant was tried.
 

 On the day the grand jury was to be impaneled and to convene, the court discovered for the first time that the jury commission, acting under the order of July 20, had failed to place slips containing the
 
 *420
 
 names of those selected as the grand jury panel in a sealed envelope, as required by law.
 

 The trial judge in his per curiam states the facts and circumstances connected with this bill and the reasons for his ruling, as follows:
 

 “Back in July, 1946, an order was signed by both judges of this court convening the jury commission, on August 7th, 1946; the jury commission met on that date and it was thought until the day for empaneling of the grand jury that it discharged its duty in a regular and legal manner. However, on the date of the empaneling of the grand jury, September 9th, 1946, Judge E. C. McClendon, the other judge of this district was presiding, and when the General Venire
 
 Box
 
 was presented to the court, inspected, and opened and the envelope labeled 'List of Grand Jurors’ handed to the Sheriff, for opening and drawing therefrom a grand jury, it was discovered there was not a single name in said envelope. Other possible errors were found to exist in the entire proceedings of the jury commission of such serious nature in the opinion of the presiding judge and of the present judge who was called in, and conferred with Judge McClendon, that the entire proceedings of the jury commission on the meeting of August 7th, 1946 were irregular, null and void. The present judge was called in to confer with Judge McClendon in as much as he would have to preside at any subsequent grand jury and petit jury sessions due to the court schedules in the district and in Webster parish to which he had been assigned by the 'Supreme Court.
 

 “In view of the irregularities committed by the jury commission and the widespread knowledge thereof due to the public announcement as to the defect in the proceedings, the judges were of the firm opinion that motions attacking the venire as then existing would be filed when the term of court arrived and the cases called for trial. In view of the discovery of the ii-regularities by the court at that time sufficient to warrant sustaining a motion quashing the same, the court took the only way out of a situation as then presented. The court decided to and did set aside the null and void venire as well as the entire proceedings of the jury commission on the previous meeting and ordered a new meeting of the jury commission so that it might select a grand jury, draw a venire and select a tales jury according to law, so that and to the end that the court would be relieved from quashing the venire and proceedings on the very day the cases were called for trial, which would then have resulted in the postponement of the cases for trial and an additional expense on the parish and State by virtue of having an illegal jury appear for the term of court.
 

 “In so doing no harm or prejudice was done the defendant, and in fact, by this action he was assured of a jury selected from a venire and tales jury legally drawn
 
 *422
 
 and presented to him as well as the State of Louisiana. The defendant was tried by a jury of his own selection, one in which he by his acceptance expressed his satisfaction; he was not obliged to take any obnoxious juror or jurors for the reason that the jury was selected without his exhaustion of his challenges prescribed by law.
 

 “Defendant used only nine (9) of his twelve (12) challenges.
 

 “No good purpose could be served by waiting for the motion to quash to be filed at the time the cases were called for trial instead of setting the venire aside by the court when the defects and irregularities were discovered by it. The trial court had a duty to perform in seeing that the venire was drawn according to law so that the defendant as well as the State for the trial of the case would be presented with a venire legally drawn and selected — that it endeavored to do.”
 

 It is the contention of the defendant that the order of the district judge in quashing, ex proprio motu, the entire jury panel and reconvening the jury commission for the purposes of selecting and drawing grand and petit jurors is null and void, and that in the absence of fraud or error the district judge had no legal right or authority to cause such an order to issue.
 

 In support of this contention counsel for defendant cites the case of State ex rel. Perez v. Livaudais, 201 La. 1083, 11 So.2d 1. We do not, however, think that the reasoning or the holding in that case is applicable here, for in that case, this court, after reviewing all the facts, was careful to point out that the reasons assigned by the trial judge for his action in executing an order quashing the grand and petit jury venires were neither legal nor sufficient to warrant his action.
 

 In this state it is made the mandatory duty of the jury commission, after selecting from the general venire list the names of 20 citizens to compose the grand jury panel, and after the names of the persons so selected have been written on slips of paper by the clerk in the presence of the commissioners, to place the slips in an envelope, seal it, and endorse thereon the words “List of Grand Jurors”. From this list the judge shall select a suitable person to act as foreman of the grand jury, and the sheriff under the direction of the court shall draw by lot from the envelope endorsed “List of Grand Jurors” the names of 11 persons, who with the foreman shall constitute the grand jury.
 

 The jury commission in this case having failed to perform its mandatory duty as provided by law, we think the order setting aside the jury panel in this case and ordering the jury commission to reconvene and to perform its duties with reference to the drawing of juries according to law was entirely proper, and in no way do we see how the defendant was prejudiced thereby.
 

 
 *424
 
 Counsel for defendant does- not charge the district judges with any wrongdoing or misconduct in office. On the contrary, counsel very properly points out that he has much respect for the honesty and integrity of both judges who preside in the district from which this appeal was taken, and that he himself does not believe that any fraud was intended to be practiced in this case by any member of the court.
 

 In final analysis, what counsel is really objecting to is the fact that defendant was tried by a petit jury drawn from the jury panel selected by the jury commissioners convened under an order of the district judge which he alleges is illegal, null, and void, and that defendant was not tried by a petit jury drawn from the panel which the judge quashed and set aside.
 

 The law is well settled that a defendant has no right to a trial by any particular jury or jurors, but has the right only to a trial by a competent and impartial jury. State v. Ramoin, 160 La. 850, 107 So. 597, and authorities therein cited.
 

 Defendant’s second ground of complaint is that the members of the jury commission were not legally notified of the time and place of its meeting. As to notification of jury commissioners, the Code of Criminal Procedure provides in Article 176: “Three members of said commission, together with the Clerk of the District Court, shall be a sufficient number to perform the duties of the Jury Commission,
 
 provided that all members shall have been notified by the clerk of the District Court of the time and place designated by him for the meeting of the
 
 Commission,
 
 which notification shall
 
 appear'
 
 from the certificate of the clerk in case of the absence of aity member thereof.”
 
 (All italics ours.')
 

 The trial judge in his per curiam states that the testimony of the clerk of court disclosed that he delivered a written notice in person to each and every member of the jury commission. A copy of said notice, filed in evidence, shows that it stated the place, date, and hour of the meet: ig as well as the object and purpose thereof, and attached to the proces verbal of the meeting of the jury commission held on September 11 is a certificate of the clerk certifying that each and every member of the jury commission was duly notified and summoned in writing.
 

 Under these facts, we find no merit in defendant’s contention, but on the contrary we find from the record in this case that there was full compliance with the law with reference to notification to the members of the jury commission.
 

 Bill of Exception No. 2.
 

 After the State had announced that it closed its case, but before defendant had called any witness or introduced any evidence, the district attorney asked the court for permission to recall a witness. Defendant objected to this request for the reason that the State had already closed its case. The court overruled the objec
 
 *426
 
 tion, and counsel for defendant reserved Bill of Exception No. 2, contending that the ruling of the court was error in that it permitted certain evidence which was prejudicial to the defendant to be introduced, including the identification of bloody clothes worn by the deceased.
 

 In the trial judge’s per curiam we find the following:
 

 “After the State had offered its testimony, the District Attorney announced 'The State rests at this time’. Whereupon, counsel for defendant requested a. few minutes recess which was granted. On the reconvening of court, before counsel for defendant made any announcement, and before counsel called any witness or offered any evidence, the District Attorney requested permission to recall Mrs. McLean, defendant’s wife, back to the witness stand which permission was granted, and by reason of that ruling, this bill of exception was reserved.
 

 “Under article 370 of the Louisiana Code of Criminal Law and Procedure, the ruling was correct in permitting the State to recall the witness at the time and was in the court’s sound discretion to do so.
 

 “This article reads as follows: ‘It is within the sound discretion of the trial judge to permit or to refuse to permit the prosecution or the defense to bring additional testimony after the evidence has been closed, provided that no additional evidence shall be heard after the argument has begun or the charge been given.’ See also State v. Coleman, 27 La. Ann. 691, 694, State v. Rose, 33 La.Ann. 932, 933, State v. Paul, 39 La.Ann. 329, 1 So. 666, State v. Scott, 163 La. 25, 111 So. 483, State v. Hill, 160 La. 579, 107 So. 433, State v. Pepper, 189 La. 795, 180 So. 640.
 

 “By this additional evidence, the witness merely identified a portion of the bed clothes of the beds on which the deceased and the defendant were lying and a gown. They were not considerably bloody and were not prejudicial to the rights of the defendant. * * * ”
 

 In addition to the authorities cited by the trial judge, Article 379 of the Code of Criminal Procedure is applicable: “The purpose of rebuttal evidence being to disprove, not to prove, the district attorney should offer at once and before the introduction of any evidence by the defendant all of the testimony upon which he relies for conviction,
 
 Hit the application of this rule must rest in the sound discretion of the trial judge"
 

 Counsel does not point out any way in which the trial judge abused his discretion in this matter or any way in which the defendant was prejudiced.
 

 Bill of Exception No. 3.
 

 In presenting his argument to the jury, the district attorney made the following statement: “Mrs. Callie Smith had the right to live and be present today, the de
 
 *428
 
 fendant had no right to take her life, and I am sure that you are going to take this into consideration in rendering your -verdict. All I can do is to put the facts before you.”
 

 According to this bill of exception, the attorney for the accused objected to this statement as being improper and prejudicial, the court overruled the objection, and this bill, No. 3, was taken.
 

 The trial judge in his oer curiam say:-, that the objection to this statement was made, but that the court d;d not overrule it, and that no request was made to the court by counsel for defendant to instruct the jury to disregard, the statement or to instruct the jury otherwise with reference to such statement. The judge further says, however, that he did at that time instruct the jury that it was the sole judge of the evidence in the case, and that it was not to consider any statement in argument not borne out or supported by the evidence. The trial judge also states that he considered the statement legitimate argument in that it was merely calling the jury’s attention to the State’s theory of the case that the killing was unlawful, and, if so, that the defendant had no right to take the life of the deceased.
 

 Counsel in his brief contends that he requested the judge to charge the jury to disregard the statement made by the district attorney, but we find that the record as made up fails to disclose any such request, and the law is well settled that, in the absence of such showing, this court will accept the findings of the trial judge. State v. Wright, 48 La.Ann. 1488, 21 So. 85; State v. Moore, 52 La.Ann. 605, 26 So. 1001; State v. Cavido, 134 La. 294, 64 So. 117; State v. Gainey, 135 La. 459, 65 So. 609; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Lowry, 153 La. 177, 95 So. 596; State v. Burris, 204 La. 608, 16 So.2d 124, State v. Gros, 204 La. 705, 16 So.2d 238.
 

 Since the defendant was on trial for the unlawful killing of Mrs. Callie Smith, this being the charge contained in the indictment returned by the grand jury, we find nothing improper or prejudicial in the statement of the district attorney.
 

 There are, of course, certain extreme cases in which an improper statement or argument made by the district attorney is not cured by the judge’s instructions to disregard. However, even if we should concede that the statement here complained of was improper, we do not think that the statement of the district attorney would bring this case within that category. State v. Gordon, 115 La. 571, 39 So. 625; State v. Horton, 151 La. 683, 92 So. 298; State v. Dreher, 166 La. 924, 118 So. 85; State v. Graziani, 168 La. 297, 121 So. 872; State v. Jones, 169 La. 291, 125 So. 127.
 

 
 *430
 
 Bill of Exception No. 4.
 

 Bill No. 4 was reserved to the court’s -overruling of a motion in arrest of judgment based on the form of the verdict rendered in this case. It is the contention of ■counsel for defendant that the verdict •does not convict the defendant of any crime known to the statutes of the State ■of Louisiana.
 

 The verdict of the jury, written on the indictment, reads as follows:
 

 “We the Jury find the Defendant Guilty •of
 
 Neg.
 
 Homicide.
 

 (signed) “Foreman
 

 “E. M. Davis”
 

 In his per curiam the trial judge points out that defendant in this case was charged in an indictment with the crime of manslaughter, and that the court in its charge instructed the jury that it might find one of three verdicts, that is: “Guilty as charged”, “Guilty of negligent homicide”, and “Not guilty”. The court further instructed the jury as to the form of its verdict: “We, the jury, find the defendant guilty as charged”, “We, the jury, find the defendant guilty of negligent homicide”, and “We, the jury, find the defendant not guilty”.
 

 The per curiam of the trial judge shows that, when the verdict was returned into open court, it was read to the jury by the clerk, pursuant to the provisions of Article 401 of the Code of Criminal Procedure, but in reading the verdict the clerk pronounced each word in full, as follows: “We the Jury find the Defendant Guilty of
 
 Negligent
 
 Homicide.” In other words, the clerk in reading the verdict construed the abbreviation “Neg.” found therein to mean “Negligent” and so read the verdict.
 

 At the request of the defendant, the jury was polled upon its verdict by the clerk, who called each juror one at a time by name, reading to such juror the verdict, again without abbreviation, as “We the Jury find the Defendant Guilty of
 
 Negligent
 
 Homicide”. Each juror was then asked, after each was addressed by name, “Is that your verdict?” and in answer to this question nine (a sufficient number to render a verdict) answered “Yes” and three answered. “No”.
 

 In State v. Ross, 32 La.Ann. 8S4, defendant was indicted and tried for murder. The verdict returned by the jury read:
 
 “gulty zvithoit capitel purnish”.
 
 In that case, as in this one, defendant contended that the verdict was illegal, null, and void, and not authorized by, or known to, the laws of this state. This court affirmed the conviction, answering that contention thus : “The law does not require even in capital cases that the jury should reduce their verdict to writing. It is sufficient if it is dethe words which we have quoted
 
 verbatim
 
 livered orally. In this case it is shown by the record that the verdict was written in above. That it was handed to the clerk who was directed to read the same. It was read aloud by the clerk to thé jury and
 
 *432
 
 the verdict distinctly announced as
 
 ‘guilty without capital punishment’,
 
 and the judge ordered it to be filed and recorded. The jury was then polled on motion of defendant’s counsel, and upon the name of each juror being called and asked by the clerk if this was his verdict, each one answered that it was. Even if the writing left in doubt what the verdict of the jury was, which is not very probable, the proceedings connected with the delivery of the verdict, which we have detailed, would certainly remove that doubt, and render it conclusive that the verdict was in accordance with and fully supported the sentence.”
 

 In the case of State v. Reed et al., 49 La.Ann. 704, 21 So. 732, 733, the defendant Reed was tried under an indictment charging the crime of murder. The jury returned into court and through its foreman delivered the following verdict: “John Reed guilty as charged”, signed “Fred. Schmidt
 
 Forman.”
 
 On motion of counsel for the prisoner the court ordered the jury polled. This being done, each juror answered that the verdict of “guilty as charged” was his verdict. In a motion in arrest of judgment, which was overruled by the lower court, defendant complained of the misspelling of the word “foreman”. This court sustained the ruling of the trial court, saying: “ * * * The verdict might have been rendered orally, and practically it was so rendered, independently of the writing. State v. Sheppard, 33 La.Ann. [1216,] 1217; State v. Walters, 15 La.Ann. 648; State v. Ross, 32 La.Ann. 854.”
 

 The verdict in State v. Watkins Smith, 33 La.Ann. 1414, read: “We are the jury find Watkins guilty of
 
 mcmsluder”,
 
 “Ja Washington.” The jury was polled and separately assented to the verdict, which was ordered to be recorded accordingly. Defendant contended that the verdict of the jury was null and void because, when the jury returned into court with its verdict, it was not written or signed by the foreman, who could not write or sign his name, but by another member of the jury, who affixed the name “Ja Washington” to •the verdict. This court in affirming the conviction said: “There is no law which requires the appointment of a foreman and verdicts to be in writing. Verdicts may be delivered orally. Polling the jury regularizes the proceedings. The member of the jury who wrote what was presented as the verdict and who placed to it, what was supposed to be the name of the foreman, evidently was not sufficiently educated in the orthography of law terms to write the word ‘manslaughter’ correctly, but he wrote it in such a manner as to make the verdict fully intelligible and a sufficient basis for record and judgment.”
 

 In State v. Hightower, 136 La. 309, 67 So. 13, 14, the State appealed from a ruling sustaining a motion in arrest of judgment aimed at the verdict of the jury. In that case the jury returned into court and
 
 *434
 
 presented through its foreman a verdict of "manslaughter”. Thereupon the clerk announced: “We, the jury, find the accused guilty of manslaughter.” The jury was polled, and each juror was asked whether that was his verdict, and each answered that it was. Defendant contended that the verdict was meaningless and fatally defective for the reason that the foreman announced the verdict
 
 “manslaughter”
 
 and never stated that it was the intention of the jury to find the accused “guilty of manslaughter”. This court found that the trial judge had erred in sustaining the motion in arrest. In the course of our opinion we said: “* * * as we have seen, the word ‘manslaughter,’ as used by the foreman of the jury, was interpreted by the clerk, in his announcement, to mean, ‘We, the jury, find the accused guilty of manslaughter,’ and, the jury having been polled, each of them answered that that was his verdict. * * * ”
 

 This court in the case of State v. Guilbeaux, 182 La. 532, 162 So. 66, 67, quoted the per curiam of the trial judge, as follows :
 

 “ ‘The fifth letter in the word
 
 guilty
 
 [in the verdict], obviously intended for a “t,” may be taken for the letter “1” or for an uncrossed “t.”
 

 “ ‘The verdict as a whole clearly exhibits the intention of the jury to return a verdict of:
 

 “' "Guilty as charged with the mercy of court, J. C. Bernard, Foreman.”
 

 “ ‘The Clerk read the verdict to the jury as follows, as the court minutes show:
 

 "
 
 ‘ "Guilty as charged with mercy of court, J. C. Bernard, Foreman.”
 

 “ ‘And the jury was asked by the Clerk if such was their verdict, to which the jurors answered “yes.”
 

 “ ‘The jury was then polled with fespect to the verdict as thus announced by the Clerk, with the result that each of the jurors declared it to be his verdict.
 

 “ ‘See: State v. Hightower, 136 La. 309, 67 So. 13; Marr’s Crim.Juris (2d Ed.) pages 1072, 1073, 1074.’”
 

 This court then said:
 

 “We have examined the original verdict returned by the jury in this case, and we agree with the trial judge that the fifth letter in the word 'guilty/ although it may be taken for the letter ‘1,’ or for an uncrossed ‘t,’ was manifestly intended for a ‘t’; and that the verdict as a whole clearly shows the intention of the jury to return a verdict of
 
 ‘Guilty as charged with the mercy of the court.’
 

 “The intention of the jury being obvious in this case, but imperfectly expressed, the verdict was perfected by the polling of the jury. State v. Hightower, 136 La. 309, 67 So. 13; State v. Blue, 134 La. 561, 64 So. 411.”
 

 In State v. Wilson, 40 La.Ann. 751, 5 So. 52, 1 L.R.A. 795, the judge charged
 
 *436
 
 the jury that among the different forms of verdict it might render was: “We, the jury, find the prisoner guilty of an'assault with intent to murder.” The jury returned the following verdict: “We, the jury, find the accused guilty
 
 with an assault by sutinge
 
 with intent to murder. L. 'E. Richards, Foreman.” When reading the verdict the clerk hesitated at the word spelled “sutinge”, and the foreman of the jury at once prompted him by stating that the word was “shooting”. On motion of defendant’s counsel the jury was polled, and the clerk read the verdict distinctly, pronouncing the word “shooting”. The lower court refused to set aside the verdict, and 'in affirming the conviction and sentence we stated: “In our minds there is no dodbt of the fact that the jury intended the word
 
 fsutinge’
 
 for
 
 'shooting’,
 
 and such being the case, their verdict is responsive to the indictment, and to the charge of the court, and the judge correctly declined to set the same aside.
 
 Vide,
 
 State v. Scott Ross, 32 Ann. 854, with which the instant case is almost identical.”
 

 In the recent case of State v. Gueringer, 209 La. 118, 24 So.2d 284, defendant was tried for the crime of manslaughter, and after trial the jury returned a verdict finding him guilty of
 
 ''neglible homicide”.
 
 On appeal to this court defendant contended that the conviction and sentence should be set aside for the reason that the verdict was meaningless and not responsive to the charge contained in the indictment or to any offense known to the law. Since “guilty of
 
 negligent
 
 homicide” is a responsive verdict to the charge of manslaughter, the sole question to be determined was whether the vei'dict of guilty of
 
 ''neglible
 
 homicide” was a valid verdict for the offense for which defendant was indicted and tried. This court found that the jury intended to use the word “negligible” but omitted in spelling the word the letters “g” and “i”; and, since the word “neglible” was meaningless, there being no such word in the English language, this court construed the verdict as one for
 
 “negligible homicide”.
 
 When the verdict was thus construed, it showed the intention of the jury to return a verdict of guilty of
 
 “negligible
 
 homicide”, and the question then presented was whether the defendant had been found guilty of
 
 "negligent
 
 homicide”. We further pointed out that the words “negligible” and “negligent” were not synonymous, and that, if we were to hold that the words “guilty of neglible homicide” (or, to write the word correctly, “negligible homicide”) meant that defendant was found “guilty of negligent homicide’!, we should have to strike from the verdict a word which the jury clearly intended to use, that is, “negligible”, and substitute a different word, that is, “negligent”, with the result that this court, and not the jury, would find the verdict. In other words, the court simply found that it was the intention of the jury in that case to find the defendant guilty of
 
 *438
 
 “negligible homicide,” a verdict which was not responsive to an indictment charging manslaughter, although a verdict of guilty of “negligent homicide” would have been responsive; and, having so found the intention of the jury, this court properly reversed the conviction.
 

 However, in that opinion we stated that it was true that in a number of cases this court has said that in construing verdicts the object is to ascertain the meaning of the jury, that the verdicts must be reasonably construed, and that a verdict is sufficient when the jury has clearly expressed the intention of finding the defendant guilty of the crime charged.
 

 Under Articles 400 and 401 of our Code of Criminal Procedure, the verdict of the jury may be rendered either orally or in writing, and, even if there were any doubt as to the true intention of the jury occasioned by the use of the abbreviation
 
 “Neg.”
 
 for the word
 
 “negligent”,
 
 the proceedings connected with the delivery of the verdict, including the polling of the jury, would certainly remove this doubt, and we find that it was the intention of the jury to render, and it did render, a verdict finding the defendant
 
 “guilty of negligent homicide
 

 Defendant contends that the abbreviation “Neg.” has no well defined meaning, and that it may mean “neglectful” or many other things; but, in construing the verdict in this case, in the light of the judge’s charge in which he informed the jury that “guilty of negligent homicide” was a responsive verdict to the charge of manslaughter and further informed it that the form of the verdict in such case was “We, the jury, find the defendant guilty of negligent homicide”, the abbreviation “Neg.” when considered with the word “homicide” becomes susceptible of only one meaning. The intention of the jury is shown beyond any question by the fact that upon being polled a sufficient number to convict the accused answered that their verdict was “We, the Jury, find the Defendant Guilty of
 
 Negligent
 
 Homicide”, as read to them by the clerk.
 

 Bill o-f Exception No. 5.
 

 Bill No. 5 was taken to the overruling of defendant’s motion for a new trial, in which motion defendant reiterated and set forth alleged errors committed during the trial of the case, all of which have been covered by the bills which we have already discussed, with the exception of defendant’s contention in this motion that the lower court erred in permitting the district attorney to reopen the case and offer evidence not covered in his opening statement and particularly to offer in evidence bloody clothes.
 

 As pointed out in our discussion of Bill No. 2, we are of the opinion that the trial judge did not abuse his discretion in permitting the State to reopen the case and introduce in evidence these articles, and
 
 *440
 
 we do not see how defendant was prejudiced thereby.
 

 With reference to counsel’s contention that this evidence was not covered by the district attorney’s opening statement, the trial judge in his per curiam to this bill refers us to his per curiam to Bill No. 2, which answers counsel’s contention thus:
 

 “The opening statement of the district attorney was sufficiently broad and all-inclusive to admit the testimony and the introduction of the articles in evidence. The opening statement referred to the fact that both parties were found in their beds shot, and the pistol was in bed with the defendant somewhat to his feet, under cover. The offerings were physical facts corroborating the testimony of the witnesses already given to the same effect. No harm or prejudice resulted to the defendant.
 

 “Since the State contended that the deceased was shot it was proper to introduce the garments she had on and the bed clothes to show the holes in the former and the place of the shooting while she was in bed, and that she was shot which caused her death. The court believes that the evidence was amply covered by the opening statement of the district attorney and that the defendant was not prejudiced or surprised in any way. The evidence was in line with the statement of the district attorney as to the State’s contention in the matter. This evidence did not introduce a new angle to the case and was not such as would surprise the defendant in the least.”
 

 It is true that under the provisions of our Code of Criminal Procedure the district attorney is required to make an opening statement, in which he must explain the nature of the charge and the evidence by which he expects to establish the same. In this case the opening statement of the district attorney is in the record. We have carefully read it, and we fully agree that this statement was sufficient to warrant the introduction of the evidence to which defendant objected.
 

 The motion for a new trial also sets forth that the lower court erred in overruling a number of objections made by the attorney for defendant and in permitting evidence to which defendant objected to be introduced. This is merely a general allegation, and no definite specification of error is contained therein. Having failed to specify the objections and the rulings of the court thereon or the evidence introduced over the objections of the defendant, this general allegation does not present anything to us for consideration.
 

 Bill of Exception No. 6.
 

 The verdict of the jury was returned on October 15, 1946, and the court at that time announced that it would pass sentence on defendant on October 29 so that defendant through counsel would have ample time to prepare and file his formal bills of exception. After the bills of ex
 
 *442
 
 ception which we have heretofore discussed had been signed by the trial judge, defendant was sentenced on October 29 to serve a term of three years in the state penitentiary. On the same day, defendant moved for, and was granted, án appeal to this court which was made returnable on or before November 18, 1946.
 

 Approximately two weeks after the defendant had applied for, and been granted, an appeal to this court, he, through counsel, presented two additional bills of exception to the court, which were never signed by the trial judge. Counsel, in an effort to have these bills incorporated into the record, then instituted a rule against the assistant district attorney, attaching thereto the two unsigned bills of exception, and prayed that the assistant district attorney show cause why said bills of exception should not be filed, numbered, and made a part of the record and transcript in this case, and prayed that the court so order.
 

 After the trial of the rule, the district judge recalled it, refusing to permit the bills of exception to be filed and made a part of the record and transcript in this case. To this ruling the defendant excepted and reserved a bill bearing No. 6 in the transcript.
 

 The ruling of the trial judge under these facts was entirely proper, for the jurisprudence is well settled to the effect that, after a defendant has applied for, and been granted, an appeal to this coúrt, the trial judge is divested of all jurisdiction and cannot take any further action in the case. Article 545 of the Code of Criminal Procedure provides: “After an appeal has been granted no further action in the case can be taken by the trial judge; provided, that as to matters of ministerial or not in controversy on appeal, the trial court may render interlocutory orders and definitive judgments.” See also State v. Barrett, 137 La. 535, 68 So. 945; State v. Young, 153 La. 605, 96 So. 275, and State v. Cole, 161 La. 827, 109 So. 505.
 

 In State v. Early, 183 La. 664, 164 So. 620, only one bill of exception was reserved by the defendant, and that was to the overruling of a motion for a new trial. Before the bill was signed by the trial judge, defendant moved for an appeal, which was granted and made returnable to this court. Six days thereafter this bill of exception was presented to the trial judge,
 
 who signed it.
 
 In the course of its opinion this court stated that the bill would apparently have had merit, if timely filed. Notwithstanding this fact, we held that, after defendant had asked for, and been granted, an appeal to this court, the lower court was without any further jurisdiction, and, although the bill of exception had been signed by the trial judge, we refused to consider it. We said: “Defendant did not reserve bills of exceptions, at the time, to the various matters of which he complains in the only bill of exceptions reserved, the refusal to grant a
 
 *444
 
 new trial, and, as that bill was signed after appeal was taken, the case is now before us, without any bill of exceptions to be reviewed, and the conviction and sentence must be affirmed.”
 

 In our opinion the trial judge in the case here under consideration was correct in recalling the rule and in refusing to sign the two bills, as these bills do not, and could not, under the jurisprudence of this state, form a part of the record, and therefore cannot be considered by us.
 

 For the reasons assigned, the conviction and sentence of the defendant are affirmed.
 

 PONDER, J., concurs in the decree.