PROVO STY, J.
The accused, Mrs. Charles Atkins, was tried for murder, was convicted of manslaughter, and sentenced to eight years at hard labor, and has appealed.
[1] She moved to quash the indictment, on *847 the ground that the grand jury which found it had been illegally constituted, for the reason that the jury commissioners who had drawn the venire were no longer in office at the time they performed that function; an order having been made by the judge appointing other commissioners in their place.
The said order was made 'by the judge at his home in another parish on the day itself on which the venire was drawn; whether before or after the drawing does not appear. Whether its having been made before the drawing would have had the vitiating effect contended for by the accused need not be considered; since, in the absence of any showing of its having been so made, the presumption attaching to the regularity of official acts would require that we assume that it had been made after.
[2] The accused, after having proved that all the state witnesses were employés of the prosecuting witness, brother of the decedent, sought to prove by one of the state witnesses that one of her attorneys had gone to the scene of the homicide, on the premises of the prosecuting witness, and was making measurements for the purposes of the trial, when the prosecuting witness interfered and ordered the attorney off the premises; and this evidence was objected to, as irrelevant. The bill of exception recites that the purpose of making this proof was to show that the case of the state had been manufactured. The argument is that this conduct of the prosecuting witness, when taken in connection with the fact that all the state witnesses were in his employ, and therefore dependent upon his will and caprice for a continuation of their jobs, tended to show that the case of the state had been manufactured by this prosecuting witness.
The said act of the prosecuting witness amounted to a suppression of evidence. It shows animosity in him towards the accused, and also a lack of confidence on his part in the ability of the prosecution to convict the accused on a fair presentation of all the facts. But neither as an isolated fact nor in conjunction with the said existing relation of employer and employé between him and the witnesses for the state does it show, or even tend to show, that the case of the state was manufactured. Perhaps, if the offer to prove it had been accompanied by the offer to go a step further and show an actual attempt to influence the witnesses, a different legal situation might have been presented. But the animosity of the prosecuting witness towards the prisoner at the bar and his lack of confidence in the ability of the state to secure a conviction on a fair presentation of all the circumstances are facts with reference to which the other witnesses of the state could not be questioned. Of itself, this act of the prosecuting witness, occurring, as it did, many days after the homicide and between other parties, formed no part of the res gestee of the homicide, and was certainly irrelevant.
The suppression of evidence by the prosecuting witness is not exactly on a par with the suppression of evidence by the accused. On the part of the latter it shows a consciousness of guilt, which is admissible as being in the nature of an admission. It shows in the prosecuting witness a lack of confidence in the case of the state, but the prosecuting witness is not the state, nor the prosecution; he is not sufficiently the agent or representative of the state for his acts to be those of the state. His abundance of confidence or lack of it are matters irrelevant to the issue.
It may well be that, if certain particular important facts had been intended to be proved by these measurements, the suppression of them might have been provable in lieu of the measurements themselves, as affording ground for inferring the existence of the *849 facts which the measurements, if not suppressed, would have proved; but such, so far as appears from the bill of exception, was not the purpose of the offer in this case, but merely to prove that the prosecuting witness had manufactured the case of the state — a fact which said suppression did not, we repeat, either prove or tend to prove.
[3] It was while the husband of the accused and the decedent were fighting that the accused fired the fatal shot. She requested the judge to give to the jury a charge embodying the proposition that the right of a wife to slay the adversary of her husband in order to save her husband’s life does not depend upon whether the husband himself would be justified in committing the deed, or, to be more specific, does not depend upon the husband’s not being at fault, or not having himself brought on the danger, but upon whether she honestly believes him not to be at fault, but to be himself entitled to slay his adversary in self-defense.
But this is not the law. In such a case, the husband himself must be entitled to slay in self-defense in order that the wife may be justified in doing so for him. 21 Gyc. 827; State v. Giroux, 26 La. Ann. 582. The philosophy of it is that another person cannot have a greater right to defend the combatant at fault than he himself has.
[4] On the evening of the homicide the accused was heard to say to her husband: “Tou go and get him [the decedent] and bring him over here, and I will kill him.” This evidence was objected to, on the ground that the purpose of offering it, as declared by the district attorney, was to prove a conspiracy between the two spouses to kill the decedent, and that, for the purpose thus declared, it was inadmissible, because at common law the spouses are considered as being one person, so that it is not possible for them to conspire together.
Perhaps so; but the evidence was clearly admissible to show deliberation and malice; especially that, immediately after the fatal shot, accused was heard to remark, “I guess the s- of a b- will not dispute my word any more,” or words to that effect.
[5-7] The accused requested that the following charge be given, and was refused:
“The plea of self-defense does not of necessity admit the intention to kill. If the defendant under the circumstances of the case as they appear to you, and under the law as charged you, had the right to kill in self-defense or in defense of her husband, she is entitled to the plea and right of self-defense, even though she did not actually intend to kill, but only to disable, the deceased.”
The line of defense of the accused was that her intention in firing upon the decedent was not to kill him, but only to disable him, and that she aimed at his arm; but. that, even if she had aimed to kill him, she would have been acting in defense of the life of her husband, and be therefore guiltless of any crime.
The object of asking this special charge to be given was to let the jury be informed that there was nothing inconsistent between these two defenses.
The learned judge assigns in his per curiam to the bill of exception that the reason of his refusing to give the charge was that he did not believe the accused when she said that she had aimed at the arm of the deceased, seeking only to disable him.
Differently from the judge, the jury might, have believed the testimony. The two defenses were not inconsistent; and we think the accused was entitled to have a charge given to the jury on that point. The refusal to give it was error, but the utmost effect the giving of the charge could legally have had would have been to reduce the crime from murder to manslaughter by showing absence of malice, and since the accused, notwithstanding the refusal of the charge, received the benefit of this reduction at the hands of *851 the jury, the situation is that she has not been prejudiced by said error, and hence that it is not ground for reversal.
[8, 9] The district attorney, in his closing address, stated to the jury that the grand jury had heard all the evidence of the state and found a bill for murder. Pearing, very properly, we think, that this calling of attention to the fact of the grand jury having reached the said conclusion after having heard all the. evidence of the state might 'give rise in the minds of the jury to some inference of guilt, the accused requested the court .to charge specifically that the finding of a bill of indictment does not create a presumption of guilt against the prisoner. The judge thought that this charge had been sufficiently included in his general charge as to an accused being presumed to be innocent until his guilt has been proven beyond a reasonable doubt. But we do not concur in that view. In the same way that a general statute does not necessarily repeal a special statute, though inconsistent, a general statement in a charge does not necessarily meet and repel some specific statement made in the course of argument. A specific statement should, in order to be fully covered, be met by a counter specific statement. But the case was not one of circumstantial evidence to be decided from inference more or less vague— a ease therefore of doubtful aspect, in which the weight of a feather might preponderate the scale — but of direct, positive testimony by eyewitnesses to a killing with a deadly weapon, and we are satisfied that no mere cobweb such as the district attorney thus sought, very improperly, to weave into the plain facts of the matter could possibly have contributed to any appreciable extent in strengthening the case of the prosecution; and hence we conclude that the said error is not of sufficient gravity to justify a setting aside of the verdict.
Judgment affirmed.