129 So.2d 12

STATE of Louisiana

v.

Henry HILLS.

No. 45060.

Nov. 7, 1960.

On Rehearing April 24, 1961.

George J. Gulotta, Peter J. Compagno, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Burton G. Klein, Asst. Dist. Atty., New Orleans, for appellee.

HAMLIN, Justice.

The defendant, Henry Hills, appeals from his conviction of a violation of LSA–R.S. 14:42 (Aggravated Rape) and sentence of death, presenting for our consideration fourteen bills of exceptions reserved during the course of trial.

Because of their similarity, Bills of Exceptions Nos. 1 and 2 will be discussed jointly.

Bill of Exceptions No. 1 was taken to the ruling of the trial judge, which sustained the objection of the State to a question collectively propounded to six prospective jurors under the following circumstances:

"Mr. Gulotta, counsel for the defendant:

"Q. *Are any of you in sympathy with any integration or segregation organizations?*" (Emphasis ours.)

Objection by the State.

"Mr. Gulotta:

"We submit, may it please Your Honor, it is a proper question for the purpose of determining the mental condition of these jurors with reference to the issue in this case." [1]

"Mr. Dowling, District Attorney for the Parish of Orleans:

"They can ask whether or not they are prejudiced against this particular individual. They can't simply take the whole race, or the whole people of the organizations, or anything of that sort.

"By the Court:

---

1. The defendant was a colored male on trial for the capital offense of rape of a white female.

"I believe for any juror to be qualified, he would have to state under voir dire that he did not have any prejudice against any individual. The Court sustains the State's objection. I think you are going too far afield."

In Bill of Exceptions No. 1 counsel for the defendant state that prior to the propounding of the above question, previous prospective jurors on voir dire examination were asked the same or similar questions without objection by the State. They allege that two of the previous prospective jurors stated that they were members of the Citizens Council of New Orleans, a pro-segregation organization, and that the defendant, through his counsel, peremptorily challenged and excused the two jurors.

Bill of Exceptions No. 2 was reserved to the ruling of the trial judge which held that the following question, collectively propounded to six prospective jurors by counsel for the defendant, was objectionable and had the effect of enlarging the scope of personal prejudice:[2]

*"Do any of you gentlemen belong to any religious or segregation groups?"* (Emphasis ours.)

In Bill of Exceptions No. 2 counsel for the defendant allege that the above question was propounded for the purpose of ascertaining and determining whether the prospective jurors were biased and prejudiced in arriving at a verdict and passing judgment on the guilt or innocence of the accused.[3]

2. In Bill of Exceptions No. 2, counsel for defendant aver: "That His Honor, the Trial Judge, then, before any other question or questions along the same line could be asked said prospective jurors, interposed an objection to the said line of voir dire examination, and stated that the question was objectionable because the defense was trying to enlarge the scope of personal prejudice."
The Trial Judge, in his Per Curiam, states: "The Court takes exception to Bill of Exception No. 2, as drawn by defense counsel, wherein it is stated in paragraph 2 that the trial Court, before any other question or questions along the same line could be asked said prospective jurors, interposed an objection to the said line of voir dire examination. The Court wishes to state that such was not the case, and that many questions had been asked as to the particular prejudice or bias of the prospective jurors with respect to racial relations and the primary fact that the defendant was of the colored

race and the prosecutrix was a white female. At no time did the Court interpose an objection, nor did the State, through the District Attorney, interpose an objection."
"Further, in Bill of Exception No. 2, filed by the defense counsel, it is stated that to save time it was agreed and understood by the State and by the defense and the Court that the Court's ruling on Bills of Exceptions Nos. 1 and 2 would apply to the voir dire examination of other prospective jurors examined subsequent to the said ruling by the Court. Such statement is correct. It was merely another way of saying that if the same question or the same type of question was asked, that the Court's ruling would be consistent and would be the same."
3. In his Per Curiam to Bill of Exceptions No. 1, the Trial Judge states:
"The objection made by the State, through the District Attorney, Mr. Dowling, was that the defense, on voir

The trial judge was of the opinion that the questions propounded to the prospective jurors were irrelevant and confusing, too general, and did not in any way tend to meet the test of a competent juror. He was of the further opinion that counsel for the defendant were trying to enlarge the scope of what could be considered legal prejudice or legal bias.

Counsel for the defendant admit in brief that they were not entitled to challenge for cause those prospective jurors who would have answered that they were members of segregation groups or organizations, or that they were segregation sympathizers,[4] but they contend that in order that they might have used the twelve peremptory challenges allowed by law to their best interest and advantage and as judgment dictated, the questions propounded to the prospective jurors as to whether they were members of segregation groups or organizations, or whether they were segregation sympathizers, were legally proper and should have been allowed, and that the trial judge's denial of an opportunity to so question these prospective jurors was a denial of a fair and impartial trial by a fair and impartial jury, a denial of Due Process of Law and equal protection of the law under the Fifth and Fourteenth Amendments of the Constitution of the United States, and a denial of the defendant's rights under the Bill of Rights of the Constitution of the State of Louisiana. Article I, Section 10, Louisiana Constitution of 1921, LSA; LSA–R.S. 15:354.

It is to be noted at the outset, as stated by the trial judge, that this is not a case involving the opening or closing of a school, or the integration of a school, or a question involving the acceptance or non-acceptance of the United States Supreme Court decision (Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083) on the question of racial discrimination in public education. It concerns the capital crime of aggravated rape alleged to have been committed by a colored man upon a white woman.

The record discloses that the trial judge was fully cognizant of LSA–R.S. 15:422(6),

dire examination, could ask any juror whether or not that particular juror was prejudiced against this particular individual, but that they could not go further and take the whole race or the whole people of an organization and ask a general question, which could be answered so generally that in no way would it indicate a prejudice against the particular individual."

4. In the case of State v. Dunn, 161 La. 532, 109 So. 56, Error Dismissed, 273 U.S. 656, 47 S.Ct. 344, 71 L.Ed. 825, we

held that because a juror tendered an accused on trial for murder was a member of the Ku Klux Klan, of which the deceased was also a member, or of that organization and of the same church and Bible class of which the deceased was a member, and of which church he was an officer, he was not incompetent, when it appeared that, notwithstanding the affiliations, the juror had not become biased or prejudiced in the case, and was in a position to decide it fairly and impartially.

which recites that judicial notice is taken of racial conditions prevailing in this State. Prior to the examination on voir dire of any of the members of the prospective jury panel, he made the following statement:

"Gentlemen of the Jury, I think I should read the qualifications needed to serve as a petit juror in this case. I am reading it not only for the benefit of the jurors in the box, but for those on the rest of the panel as well. In order to serve as a grand juror or a petit juror in any of the Courts of this State, you must be a citizen of this State not less than 21 years of age, a bona fide resident of the Parish of Orleans one year preceding service on this particular panel, able to read and write the English language, not under interdiction or charged with any offense, or convicted at any time of any felony, providing there shall be no distinction on account of race, color or previous condition of servitude. I make this mention to you gentlemen so that you will understand that unless you meet these qualifications you would not be qualified to serve as a juror. Unless someone signifies he does not meet these qualifications, the Court will assume you do meet them."

The record further discloses that prior to the taking of the instant bills of exceptions, questions were propounded to the jury panel as to whether the variance in race of the prosecuting witness and the accused would create a bias or prejudice in their minds. There were no indicative answers that this fact would cause the jurors to have any particular or personal bias or prejudice against the defendant because of that fact alone. The following question with respect to the particular offense of rape was asked of the jurors:

"Do any of you gentlemen of the jury have a particular or personal prejudice for the crime of aggravated rape in and of itself?"

LSA–R.S. 15:357 sets forth that the purpose of the examination of jurors is to ascertain the *qualifications* of the juror in the trial of the case in which he has been tendered, *and the examination shall be limited to that purpose.*

"The term 'qualification' * * * has reference to the state of the juror's mind and not to his experience in serving on juries, or the lack of such experience. The purpose of the examination is to determine whether the juror stands indifferent between the state and the prisoner. He is considered indifferent when he is neither biased in favor of nor prejudiced against the accused; when he has not formed or expressed an opinion as to the guilt or innocence of the accused; and, finally, when he entertains no conscientious scruples which would prevent him from carry-

ing the law into effect, the object of the law being to select impartial jurors to try the issue between the state and the accused. * * *" State v. Swain, 180 La. 20, 156 So. 162, 163.

Our law is well settled that a defendant has no right to a trial by any particular jury or jurors, but has the right only to a trial by a competent and impartial jury. State v. McLean, 211 La. 413, 30 So.2d 187; State v. Ramoin, 160 La. 850, 107 So. 597. The presiding judge has discretion in passing upon the qualifications of jurors, and, in this State, his rulings on matters of that character will not be set aside by the reviewing court unless the error is manifest. State v. Collier, 161 La. 856, 109 So. 516; State v. Kifer, 186 La. 674, 173 So. 169, 110 A.L.R. 1017; State v. Addison, 134 La. 642, 64 So. 497; State v. Chandler, 178 La. 7, 150 So. 386.

"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; and when tried by jury shall have the right to challenge jurors peremptorily, the number of challenges to be fixed by law." Article I, Section 10, Louisiana Constitution of 1921. In the trials of criminal prosecutions punishable with death or necessarily with imprisonment at hard labor, each defendant shall be entitled to challenge peremptorily twelve jurors, and the prosecution twelve for each defendant. LSA-R.S. 15:354. A juror may be challenged because he is not impartial, the cause of his bias being immaterial. LSA-R.S. 15:351 (1).

At the time the questions, supra, were disallowed on voir dire examination of prospective jurors, the defense had used two peremptory challenges. Despite this fact, counsel for the defendant contend that had they secured affirmative answers to their questions which would not have been a basis for a challenge for cause, supra, they could, nevertheless, have protected the accused against a juror or jurors unacceptable to them by using the ten remaining peremptory challenges, which, under the law, they had a legal right to use as they thought proper, thereby exercising the right of rejection rather than the right of selection. State v. Henry, 196 La. 217, 198 So. 910; State v. Ferguson, 187 La. 869, 175 So. 603.

Counsel for the defendant cite the cases of Smith v. United States, and Brown v. United States (decided in one opinion), 4 Cir., 262 F.2d 50, in which the United States Court of Appeals held that counsel for appellants should have been permitted by the trial judge to ask prospective jurors on the voir dire examination whether they were members of the Ku Klux Klan or the White Citizen's Council; Raymer v. State, 32 Okl.Cr. 385, 241 P. 499, in which the Criminal Court of Appeals held that the refusal of the trial court to permit coun-

sel for defendants to question jurors as to membership in the Ku Klux Klan was reversible error; and, State v. Tighe, 27 Mont. 327, 71 P. 3, where the Supreme Court of Montana held that it was proper for counsel for defendant to ask each juror, when called and sworn on his voir dire, whether he was a member of the Knights of Pythias, or of the Order of Odd Fellows, or of the Order of Sons of Hermann. We do not think that these cases are apposite because the questions propounded on voir dire examination of prospective jurors therein were particularized as to specific organizations and not generalized as in the instant matter.

We agree with the trial judge that the propounded questions, supra, were too general. He correctly stated in his per curiam to Bill of Exceptions No. 1, which reasoning also covers Bill of Exceptions No. 2:

"* * * the question is not whether they belonged as members or officers or whether they contributed money or physical efforts to any particular organization, but, rather, if they were in sympathy with either a segregation organization or an integration organization. Counsel for the defense states that it was for the sole purpose of determining the mental condition of the prospective jurors.

"The Court fails to see how the mental condition of a prospective juror concerning this particular defendant, in this particular case, and this particular complainant or victim, and how the answer to the question could in any way give some notice as to the mental condition of the prospective juror.

"The question looms up, what does the word 'sympathy' mean? Many times an appellate Court or a trial Court has sympathy for a particular litigant or defendant, and yet, must, per se, because of the law, rule against the individual, so that in and of itself sympathy does not indicate or should not indicate that a person would want to render a decision for a particular individual merely because he has sympathy for said individual.

"The question is so general, and the Court wonders how the prospective jurors could answer such a question, whether they would answer yes or no. It was a double jointed question."

We do not find that the trial judge abused his discretion, prejudiced the defendant, impaired the constitutional and statutory rights of peremptory challenge and rejection allowed the defendant, or committed

manifest error. He complied with the essential demands of fairness (State v. Henry, 196 La. 217, 198 So. 910) in sustaining the objections advanced by the State to the general questions, supra. To have permitted the general questions, supra, to have been answered would not have determined the impartiality of the jurors but would have simply confused the issues of this cause.

Bills of Exceptions Nos. 1 and 2 are without merit.

Bill of Exceptions No. 3 was reserved to the ruling of the trial judge holding that the testimony of Mr. Owen Fraisse, landlord of the prosecuting witness and the first person to whom she spoke after the alleged rape and the first person to whom she related the alleged rape, constituted res gestae. Objection was made to the entire testimony of Mr. Fraisse which was made part of the bill.

Mr. Fraisse testified that he lived at 1828 Baronne Street, New Orleans, Louisiana, and that the prosecuting witness occupied an adjoining apartment, 1830 Baronne Street. He said that shortly after midnight of March 28, 1958 (March 29, 1958), he heard a banging at his door; he opened the door and saw the prosecuting witness in an hysterical and scarcely audible condition, her mouth "busted" and bleeding, and her clothing disarranged and dirty. The prosecuting witness entered Mr. Fraisse's

apartment and after approximately five minutes she calmed down and related that she had just been raped by a colored boy around the corner. She told him that her attacker was wearing a coat (jacket) and hat and described him as having thick lips. Mr. Fraisse said that the prosecuting witness stated that she would recognize her attacker by his walk, by his talk, and by his face, and that she would remember her attacker the remainder of her life. Mr. Fraisse stated that he summoned the police; they arrived at his apartment within fifteen minutes of his call.

Counsel for the defendant urge that the testimony of Mr. Fraisse, as to what was said and told by the prosecuting witness to him after the alleged commission of the offense and after the prosecuting witness had calmed down, is not res gestae. They contend that the testimony was hearsay and was the most damaging testimony in the record to the defendant other than the testimony of the prosecuting witness herself.

The State sets forth that the purposes of Mr. Fraisse's testimony were to show that an outcry was immediately made after the rape and to corroborate the testimony of the prosecuting witness as to her physical appearance and condition.

LSA–R.S. 15:447 describes Res Gestae as events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive

and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence (LSA-R.S. 15:447); but to constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:448; see, State v. Fisher, 168 La. 584, 122 So. 858; State v. Labat, 226 La. 201, 75 So.2d 333.

The trial judge's per curiam to Bill of Exceptions No. 3 reflects that he found that an outcry or complaint of the attack had been made by the prosecuting witness to her landlord immediately after the commission of the attack; he admitted Mr. Fraisse's testimony as res gestae because it was concerned with the identification of the alleged assailant, who was not apprehended until some five months after the commission of the attack. The prosecuting witness later testified as to the incidents and events of the rape; she identified the defendant as her assailant. The testimony of Mr. Fraisse was used to corroborate this fact.

"Moreover, a person to whom a complaint has been made by the victim of a rape may testify as to the particulars of the complaint made by the prosecutrix against the accused immediately after, or contemporaneously with, the commission of the crime, not as proof of the truth of the statement made but as part of the res gestae. * * *" State v. Labat and Poret, 226 La. 201, 75 So.2d 333, 340.

The record reflects that Mr. Fraisse's testimony was given previous to that of the prosecuting witness. Counsel for the defendant argue that if Mr. Fraisse's testimony was offered as a mere and bare complaint it could be offered as original evidence without any foundation being laid for its admission, but that evidence of the details and particulars of a complaint can be offered in evidence only when and in the event that the testimony of the prosecuting witness is impeached, and if her testimony is impeached the State has the right to offer in evidence the details of the complaint for the purpose of corroborating the testimony of the prosecuting witness.[5]

5. "* * * In the case of State v. Robertson, 1886, 38 La.Ann. 618, this court held that a person to whom complaint has been made by the victim of a rape, when placed on the witness stand, cannot be permitted to repeat all the details of the outrage, and the name of the ravisher, as reported to the witness, but can only testify as to the facts of the complaint having been made, and as to the condition of the victim when making the complaint. Bishop, in his treatise on Criminal Procedure, states that this is the English and the more common American practice. To the same effect is Greenleaf on Evidence. When the statements are part of the res gestae they are excepted from the operation of the rule just stated, and they may also be drawn out by the defendant on cross-examina-

■■ There is a tendency of the courts to extend rather than narrow the scope of the introduction of evidence as res gestae. State v. Fisher, 1929, 168 La. 584, 122 So. 858. Mr. Fraisse testified as to the particulars of the complaint related to him by the prosecuting witness at a time when she was distraught and just calm enough to talk. Her outcry was given to him within a half hour of the alleged attack. We find, from the testimony attached to the bill, that the prosecuting witness's words were impulsive and spontaneous. We do not find that her testimony was a narration of events. We agree with the trial judge that the testimony of Mr. Fraisse was res gestae.

It should be remembered that the Code of Criminal Procedure was adopted in 1928. Unnecessary technicalities were eliminated. The just rights of the defendant were safeguarded. Therein we find Article 447, which recites that "What forms any part of the res gestae is *always* admissible in evidence." (Emphasis ours.) To the same effect is LSA–R.S. 15:447, supra.

Webster's International Dictionary, Second Edition, defines "Always" as meaning "at all times; constantly during a certain period, or regularly at stated intervals; * * *." Webster's New World Dictionary of the American Language, College Edition, defines "Always" as "1. at all times; on all occasions; invariably; opposed to sometimes. 2. all the time; continually; forever."

■ We find that under the Code of Criminal Procedure of 1928, Article 447 (now LSA–R.S. 15:447), testimony constituting res gestae could be offered before that of the prosecuting witness. The decisions in State v. Langford and State v. Peter (Footnote No. 5, supra), cited by counsel for the defendant, were rendered before the enactment of said code.

"The general rule is that criminal or penal statutes must be strictly con-

tion. They may be admitted to corroborate the testimony of the prosecutrix, but only when her testimony has been impeached. When they are offered by the state in making out the case against the accused, and before the testimony of the prosecutrix has been impeached, they will be rejected, as was done in the case of State v. Robertson, * * *" State v. Langford, 1893, 45 La.Ann. 1177, 14 So. 181, 183.

"There was no error in permitting Mrs. Dudley and other witnesses to prove the details and circumstances, and the particulars of the complaints made by the prosecutrix against the accused immediately after the commission of the offence, as a part of the transaction, and not as proof of the truth of the statements as made. Wharton, Crim.Law, p. 441; Starkie on Ev., vol. 2, p. 951; Greenleaf on Ev., vol. 1, p. 167, Sec. 123.

"Such evidence is generally admitted after the complainant has testified to the nature of the offence committed against him, in order to show his credit and the accuracy of his recollection.' State v. Peter, 1859, 14 La.Ann. 521.

strued in favor of the defendant, but the construction should not be unduly technical, and the court may resort to all the other rules of construction and give each its appropriate scope, including rules relating to the purpose of the statute and the controlling intent of the Legislature." From the syllabus of State v. Davis, 208 La. 954, 23 So.2d 801.

■ Consideration of the testimony properly presented convinces us that no prejudice was committed against the defendant by the admission of Mr. Fraisse's testimony prior to that of the prosecutrix. We might also remark that "the defendant cannot regulate the state in its order of proof, * * *." State v. Goins, 232 La. 238, 94 So.2d 244, 252; State v. Childers, 196 La. 554, 199 So. 640.

Bill of Exceptions No. 3 is without merit.

Bill of Exceptions No. 4 was reserved to a statement made by the trial judge while the State's witness, Owen Fraisse, was under cross-examination by counsel for the defendant.

6. While the witness, Owen Fraisse, was a patient at Baptist Hospital, the following statement was taken from him by members of the District Attorney's Office: "Statement of Owen Fraisse, taken at the Southern Baptist Hospital in the City of New Orleans, on the 13th day of November, 1958—'I spoke to [the prosecuting witness] immediately after she was attacked by an unknown negro male. She

Co-counsel for the defendant, Mr. Peter J. Compagno, visited the witness for the prosecution, Owen Fraisse, several times prior to trial. These visits were at Mr. Fraisse's home and at the Baptist Hospital where the witness was a patient prior to trial and subsequent to the date of the commission of the offense under consideration herein. The following testimony with respect to conversations which took place during these visits was elicited on cross-examination:

"Q. You testified that the prosecuting witness, or prosecutrix, after she calmed down about five minutes later, told you her assailant was wearing a hat? A. Yes.

"Q. Did she tell you what kind of a hat? A. She told me a wide-brimmed hat.

"Q. Now, did you make any mention of that in this statement you have just read?" [6]

Argument between counsel.

"Q. And, didn't you again tell me in the Baptist Hospital, that she told

told me that the negro was wearing a cap and that she could identify him if she saw him again. She did not tell me that the 'only clue to the identity of the culprit,' was the sound of his voice, and that she could identify him in any other way. As a matter of fact, she told me that she could never forget what he looked like.' Signed, Owen Fraisse."

you her assailant was wearing a 'Bee-bop' cap? A. No. You were the one that mentioned about the 'Bee-bop' cap. I can tell you just exactly how that came up. She said he walked 'like a cat,' and you asked me to describe how I meant, walking 'like a cat,' and I said these seventeen and eighteen year olds, the way they walk, and you said, 'them kind of fellows that wear them "bee-bop" caps.' And, I said 'yes.' That's how the cap came in.

"Q. And you did, on the 13th day of November, 1958, sign this statement that the assailant was wearing a cap, according to the way she spoke to you on the morning of March 29, 1958? A. I guess I did. I signed it. That's my signature.

\* \* \* \* \* \*

"Q. Now, didn't I visit you a third time at your residence? A. Yes.

"Q. After you returned from the Baptist Hospital? A. That's right.

"Q. And, didn't I talk with you again at that time? A. You did.

"Q. And, didn't you again mention that the assailant was wearing a cap, according to what [the prosecuting witness] told you on March 29, 1958? A. No, I didn't.

"Q. You testify I again mentioned the 'bee-bop cap'? A. I didn't say that.

"Q. You didn't say that? A. No. I said I didn't mention about the cap on the third occasion.

"Court: *He didn't say that. He said he didn't mention about the cap on the third occasion.*" (Emphasis ours.)

Counsel for the defendant state in brief that they were attempting to show on cross-examination of Owen Fraisse that according to a written statement made by him, supra, the prosecuting witness had said to Mr. Fraisse that the person who assaulted and raped her on the night of March 28, 1958 wore a cap, which was in conflict with the testimony of the prosecuting witness, her statement being positive to the effect that her assailant wore a hat not a cap. They argue that the above statement of the trial judge was a denial of the defendant's constitutional right of trial by jury on the facts and a violation of LSA–R.S. 15:384, which recites:

"It belongs to the jury alone to determine the weight and credibility of the evidence, but the judge shall have the right to instruct the jury on the law but not upon the facts of the case. The judge shall not state or recapitulate the evidence, repeat the testimony of any witness, nor give any opinion as to what facts have been proved or refuted."

In his per curiam to Bill of Exceptions No. 4, the trial judge explains his intervention as follows:

"So that at the time Mr. Compagno is referring to his third visit with the witness he again became confused as to who mentioned the 'bee-bop' cap, whether the witness said it or whether he said it, and this was particularly important at this phase of the case because the witness had previously, on two occasions, stated that at no [time] did he bring up the subject of a 'bee-bop' cap, and explained the specific circumstances in his second answer, previously referrred to.

"The Court felt, and we quote R.S. 15:374:

"Neither upon direct nor cross-examination is it permissible to propound a question which assumes as true that which the jury alone are charged with finding, or which assumes as proven facts which have not been proven, *or which assumes that particular answers have been given that have not been given.'* " (Emphasis ours.)

"The Court feels that the incident of the trial at this particular juncture warranted the intervention by the Court because it was apparent that counsel for the defendant, Mr. Compagno, was becoming completely confused as to what the witness, Mr.

Fraisse, had said in answer to previous questions, or had not said.

"To put the matter differently, Mr. Compagno was assuming that a particular answer was given by Mr. Fraisse to the effect that he, Mr. Fraisse, had testified that Mr. Compagno brought up the subject of a 'bee-bop' cap when he visited him the third time. Mr. Fraisse's reply was no, that Mr. Compagno was confused, that he, Mr. Fraisse, did not say that Mr. Compagno mentioned the 'bee-bop' cap on the occasion of the third visit and, in fact, Mr. Fraisse went further and said no, that he didn't mention about the cap at all on the third occasion.

"The Court feels that proper control in the discipline of his Court, the trial Judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel. See R.S. 15:-369." [7]

LSA–R.S. 15:557 recites:

"No judgment shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the grounds of misdirection

---

7. "In the discipline of his court the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." LSA–R.S. 15:369.

of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

■ Our examination of Bill of Exceptions No. 4 and the trial judge's per curiam thereto discloses that no prejudice was committed against the defendant by the statement of the trial judge as to what the witness Owen Fraisse had said. We have also held that there is an exception to the rule set forth in LSA–R.S. 15:384:

"But there is a clearly defined exception to this rule, which we think governs the case at bar. It is well settled that it is not improper for the Court to make statements which may pertain to the facts in the presence of the jury '* * * while ruling on the admissibility and effect of evidence and the validity of objections thereto * * * provided they are not unfair and prejudicial to accused.' See 23 C.J.S. Criminal Law § 992. Also 53 Am.Jur. Trial Section 79. This exception has been repeatedly recognized and applied

by this Court. * * *" State v. Scott, 237 La. 71, 110 So.2d 530, 538, certiorari denied 361 U.S. 834, 80 S. Ct. 85, 4 L.Ed. 75.

"In overruling an objection a trial judge may carelessly repeat the statement of a witness to explain his ruling, and by doing so commit reversible error which entitles the defendant to a new trial. Each case, however, will have to be passed upon under its own special state of facts. * * *" State v. Nicolosi, 228 La. 65, 81 So.2d 771, 774.

We do not find that the trial judge's statement was a violation of defendant's statutory or constitutional rights which would entitle him to a new trial. Bill of Exceptions No. 4 is, therefore, without merit.

■ Bill of Exceptions No. 5 was reserved to the ruling of the trial judge holding that the testimony of Lieutenant Robert Lampard of the New Orleans Police Department, to the effect that several suspects were presented to the prosecutrix for identification on the morning of March 29, 1958, was admissible in evidence.

Counsel for the defendant contend that because the defendant was not present at the time of the attempted identification of other suspects, the evidence of such occurrences could not be binding upon him and was inadmissible in evidence against him.

The record discloses that the purpose of Lieutenant Lampard's testimony was to show that an investigation was made of the instant offense immediately after it transpired. The defendant's name was not mentioned in this testimony, and he was not prejudiced thereby.

Bill of Exceptions No. 5 is without merit.

■ Bill of Exceptions No. 6 was reserved to the ruling of the trial judge holding that an answer given by Sergeant Peter J. Porretto, a member of the New Orleans Police Department and a witness for the prosecution, while on cross-examination, was responsive to the question propounded to him.

The note of evidence attached to the bill reads as follows:

"A. I was not there at the time of the original arrest. I arrested him on Terpsichore Street at the time of a complaint of another person at approximately twelve midnight on the night of August 23, 1958.

"Q. This line-up was especially set up in connection with an alleged rape of March 28, 1958? A. That's right.

"Q. And, you knew what he was there for at that time, didn't you? A. *No, sir. At the time I arrested him, I arrested him with another case which involved some other people.*" (Emphasis ours.)

Counsel for the defendant contend that the offense brought out in the above answer had no relation to the instant crime. They argue that the answer was not an exception to the general rule that evidence of the commission of another crime, whether it be committed before or subsequent to the offense for which the defendant is on trial, is not admissible during trial for a specific crime. They further state in brief:

"* * * The Court in permitting Police Officer to testify to a subsequent offense was clearly prejudicial to the accused, and it allows jurors to hear this testimony and look upon the accused as having committed a similar crime which definitely should have been rejected by the Court, which therefore was prejudicial error against the interest of the accused."

We do not find that Sergeant Porretto's answer is cause for reversal or that the defendant was prejudiced thereby. LSA–R.S. 15:557, supra. The police officer was testifying to the fact that he conducted the line-up at which the defendant was identified. He merely stated that he had arrested the defendant in connection with another matter involving other people, not that the defendant had committed another offense or had been found guilty of another offense. Under the circumstances of the testimony, there was no violation of the rules of evidence.

Bill of Exceptions No. 6 is without merit.

Bill of Exceptions Nos. 7 and 8 were waived by counsel for the defendant.

■ Bills of Exceptions Nos. 9 and 10 were reserved to the trial court's overruling counsel's objections to the Assistant District Attorney's description of the defendant as "this primitive beast of the jungle," and to his statement, "I wish I could call him worse than a primitive beast of the jungle," which were made during opening argument before the jury.

Counsel for the defendant argue that the phrase and statement were prejudicial, unfair, and improper. With respect to the statement, "I wish I could call him worse than a primitive beast of the jungle," counsel state in brief:

"That in our humble opinion, was not a legitimate argument or inference from the facts of the case. It was a manifest appeal by the prosecuting officer to the prejudice of the jury by injecting into the case his personal feelings and personal sentiments."

LSA–R.S. 15:381 recites:

"Counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence; and counsel shall refrain from any appeal to prejudice."

LSA–R.S. 15:382 further provides:

"Counsel have the right to draw from the evidence received, or from the failure to produce evidence shown to be in the possession of the opposite party, any conclusion which to them may seem fit, but counsel have no right to draw from such evidence or suppression of evidence an incorrect conclusion of law."

In interpreting the above articles our jurisprudence has held:

"While it is better to omit such opprobrious terms in referring to an accused, although there is evidence in the record, as there is here, tending to establish that the accused are of that type of men, (the district attorney remarked: 'So now we get the defense that the negroes "hijacked" these two rats'), nevertheless, we feel satisfied that the remark of the district attorney, so classifying the accused, did not operate to their prejudice. It is only in an extreme case of gross misconduct, of such nature as to influence the jury, that a verdict will be set aside by reason of improper remarks made by the district attorney, and the court should then feel that the remarks contributed to the verdict found. State v. Johnson & Butler, 48 La.Ann. 87, 19 So. 213; State v. Hamilton, 124 La. 132, 137, 49 So. 1004, 18 Ann.Cas.

981." State v. Davis, 178 La. 203, 151 So. 78, 80. Cf., State v. Tucker, 204 La. 463, 15 So.2d 854.

"A prosecuting officer is required to base his argument and his deductions and conclusions upon the evidence adduced during the trial and should, therefore, confine himself to a discussion of the case as presented with such reasonable comment thereon as the evidence may warrant. However, this court will not ordinarily set aside a verdict and grant a new trial because of the impropriety of a statement made by the district attorney in his argument to the jury, * * * providing it does not appear from the record that the jury was influenced by such remark or that the same contributed to the verdict returned by them. * * *" State v. Fletcher, 210 La. 409, 27 So.2d 179, 183.[8]

"It is a well-settled principle that as a matter of law, the prosecuting officer has the right to press upon the jury any view of the case arising out of the evidence—the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty. To justify setting aside a verdict of a jury, approved by the trial judge, on the ground of intemperate or improper remarks made by a Dis-

trict Attorney, we would have to be thoroughly convinced that the jury was influenced by such remarks, and also, that the remarks contributed to the verdict found. * * *" State v. Alexander, 215 La. 245, 40 So.2d 232, 234. See, State v. Labat and Poret, 226 La. 201, 75 So.2d 333.

All of the evidence is made a part of Bill of Exceptions No. 17, which was reserved to the overruling of the defendant's motion for a new trial. That bill will be discussed infra. The testimony of the prosecutrix describes in detail the offense which she alleges the defendant committed upon her. She states that when she was about to enter her apartment on the night of March 28, 1958, the defendant approached her and finally forced her into an alley, telling her that he had a gun. There, she says, he told her to remove her clothes —even though she was in her period—and knocked her to the cement. He hit her in the face and stomach and forced her to have intercourse with him three times. She also alleges that he tried to force his sex organ into her mouth

The phrase and statement of the Assistant District Attorney—"this primitive beast of the jungle," and "I wish I could call him worse than a primitive beast of the jungle,"—are, in our opinion, deductions and conclusions drawn from the testi-

---

8. The quotation is a correct statement of the law even though the conviction and sentence were set aside.

mony of the prosecutrix. They are not violative of LSA–R.S. 15:381 and 15:382, supra,[9] nor are they an appeal to prejudice.

Bills of Exceptions Nos. 9 and 10 are without merit.

Bill of Exceptions No. 11 was reserved to the instruction of the trial judge to the jury that the statement of the Assistant District Attorney, "the night was clear and not raining," referring to the night of the alleged commission of the offense charged and made during the course of argument to the jury, was counsel's appreciation of the facts which they believed had been testified, and that each side had a right to make deductions from the evidence, it being up to the jury to determine whether or not there was evidence to justify the remarks made by counsel.

Counsel for the defendant argue that the above statement was probably the most damaging statement in the case against the defendant, other than the identification of the defendant by the prosecuting witness. They state in brief:

" * * * an examination and study of the entire record and the evidence in this case, shows that the defendant was convicted capitally on the unsupported and uncorroborated testimony of the prosecuting witness as to the identity of the defendant. [The entire record was made a part of this bill.] The question in this case was not whether [the prosecuting witness] with whom we sympathize deeply, was raped on the night of March 28, 1958. That was not the question in the case at all. The question in the case was and is as to whether or not the defendant who was on trial, was the man who had raped her and practiced the indecencies that she complained of. It was purely and simply a case of identification of the defendant. It was a question as to whether, from the testimony as a whole of [the prosecuting witness], she was identifying the right man; and therefore, the question as to whether or not it was a clear night, necessarily had had a tremendous bearing on the relia-

9. In State v. Goodwin, 189 La. 443, 179 So. 591, 599, Bill of Exceptions No. 5 was reserved to the court's permitting an alleged vituperative argument to the jury. The bill shows that, while the assistant district attorney was "arguing his appreciation of the evidence and drawing his conclusions therefrom, he stated that Goodwin was a man who was actuated by primitive instincts and not by reason. * * * " This Court agreed with the trial judge that there was evidence in the record from which the assistant dis-

trict attorney could logically and fairly argue that the conduct of the accused showed he was acting by primitive instincts as a creature of the jungle and not by reason. See, State v. Meche, 114 La. 231, 38 So. 152; State v. Spurling, 115 La. 789, 40 So. 167; State v. Riggio, 124 La. 614, 50 So. 600; State v. Thomas, 161 La. 1010, 109 So. 819; State v. Hoover, 219 La. 872, 54 So.2d 130; State v. Brazile, 234 La. 145, 99 So.2d 62.

bility of her identification and the weight that should have been given it."

The testimony of the prosecuting witness is replete with statements to the effect that she saw her attacker. She said that before the attack she saw him from the street light; that at one instance they were standing under a street light. Photographs of the locale of the crime were submitted in evidence and identified by the prosecuting witness. The trial judge states in his per curiam to this bill that the pictures were taken at 1:15 A.M. on March 29, 1958, or approximately one hour and twenty minutes after the alleged offense, and that they show the ground to be clear of any rain. From the aforesaid evidence, the Assistant District Attorney concluded that the night of the crime was clear and free from rain. We find that his deduction was fit. LSA–R.S. 15:382.

We do not find that the statement, "the night was clear and not raining," prejudiced the defendant with respect to the question of identification. Testimony of record is explicit that the prosecutrix identified the defendant not only by appearance but also by voice.

Bill of Exceptions No. 11 is without merit.

■ Bill of Exceptions No. 12 was reserved to the trial judge's denial of a request by counsel for the defendant for a mistrial. The request was made when the District Attorney in closing argument to the jury stated:

"* * * and the revolting and disgusting facts as brought out on this evidence would inflame the minds of any decent men to such an extent that they would take extreme action if they could, at the moment, catch the assailant."

Counsel for the defendant urge that the effect and import of the above argument was so irreparably injurious and so prejudicial to the defendant as to preclude his receiving a fair and impartial trial; they contend that the defendant was denied due process of law and equal protection of the law under the Constitution of the United States and of the State of Louisiana.

We believe that the reasoning set forth in our discussion of Bills of Exceptions Nos. 9 and 10 applies to the instant bill. The statement of the District Attorney was no more than a deduction and conclusion from the evidence and did not prejudice the defendant.

Bill of Exceptions No. 12 is without merit.

Bill of Exceptions No. 13 was waived by counsel for the defendant.

■ Bill of Exceptions No. 14 was reserved to the trial judge's general charge on the subject of flight, which recites:

"Flight: The court charges you, gentlemen, that the flight of an accused, or escape, or attempt to escape, on the part of the accused, taken alone, does not raise a legal presumption of guilt. The fact of an accused having fled, or having actually escaped from custody, if proved, are merely facts in the case to be taken into consideration by the jury in connection with probabilities for or against the guilt of the accused.

"Flight, or an attempt to escape may be prompted by a sense of guilt, but not necessarily so. If you find that the accused fled, or attempted to escape, or did escape, it is for you to consider what was the motive of the flight, or the attempt to escape, or the escape."

Counsel for the defendant contend that there is no element of flight in this case, and that the judge's charge on flight was confusing to the jury and prejudicial to the defendant.

LSA–R.S. 15:385 provides:

"The judge shall charge the jury on the law applicable to the case and shall charge the jury that it is their duty to accept and to apply the law as laid down for them by the judge."

The alleged rape in this case occurred on March 28, 1958; the accused was not arrested until August 23, 1958, approximately five months later. This event suggests the fact of flight, which is defined as: "a fleeing; running away from or as from danger." Webster's New World Dictionary of the American Language, College Edition.

"Flight. * * * More specifically, in legal application, the absenting of one's self from the community of the crime out of a sense of guilt, out of fear of, or to avoid, arrest; the evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention or the institution or continuance of criminal proceedings." 36 C.J.S. p. 1027.

"The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight." 22 C.J.S. Criminal Law § 625, p. 958.

A reading of the above charge shows that it was explicit, concise, and thorough. We find that the charge was not a source of confusion to the jury but that it was a means of clarification. The charge was intended to assist the jury in determining

the guilt or innocence of the defendant and was not prejudicial to him.

There is no merit to Bill of Exceptions No. 14.

 Bill of Exceptions No. 15 was reserved to the refusal of the trial judge to give the jury the following charge requested by counsel for the defendant:

"The Court instructs the jury, that in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all of the testimony in the case, both that for the prosecution and that for the defendant, considering the means of identification; the circumstances under which he was identified, the opportunity for identifying the said defendant; the influence brought to bear on person claiming to identify the defendant; the description of his apparel as stated by the witness, and the probabilities or improbabilities that it was the defendant, and if after so judging and weighing the evidence, you are not satisfied beyond all reasonable doubt, that the defendant has been correctly identified as the person who committed the offense charged in this indictment, it will be your duty to find the defendant Not Guilty."

Counsel urge that the charge requested was applicable to the facts of this case. They contend that this prosecution is a case of mistaken identity, and that there is a conflict in the testimony as to whether the alleged assailant wore a cap or a hat and as to the color of the jacket worn by him.

A reading of the requested charge clearly shows that it would have required qualification, limitation or explanation.

"* * * Except as otherwise provided herein, the judge must give every such requested charge that is wholly correct and wholly pertinent, unless the matter contained in such charge have been already given, or unless such charge require qualification, limitation or explanation." LSA–R.S. 15:390; State v. Courreges, 201 La. 62, 9 So.2d 453; State v. Labat and Poret, 226 La. 201, 75 So.2d 333; Michel v. State, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83.

We have carefully read the general charge given by the trial judge to the jury. It is made a part of the transcript in this case and is in strict compliance with LSA–R.S. 15:387. It is an · exhaustive statement of the law relative to the crime with which the defendant was charged, and it covers the matter referred to in the requested charge above quoted. The trial judge does not commit error nor does he prejudice the defendant when he refuses

to give special charges which are covered by his general charge. State v. Sears, 220 La. 103, 55 So.2d 881; State v. Robinson, 221 La. 19, 58 So.2d 408; State v. Matassa, 222 La. 363, 62 So.2d 609.

Bill of Exceptions No. 15 is without merit.

▬ Bill of Exceptions No. 16 was reserved to the refusal of the trial judge to give the jury the following special charge:

"In a charge for the offense of aggravated rape, although the jury may convict on the uncorroborated testimony of the prosecutrix, I charge you that where there is no corroboration of the testimony of the prosecuting witness by surrounding facts and circumstances, you should receive the testimony of said prosecuting witness with scrutiny and with care and caution before consenting to a verdict of Guilty."

The same reasoning applied to Bill of Exceptions No. 15 applies to Bill of Exceptions No. 16, and it is, therefore, without merit.

▬ Bill of Exceptions No. 17 was reserved to the trial court's overruling the motion of counsel for the defendant for a new trial. This bill is without merit. It presents nothing new for our consideration. State v. Smith, 234 La. 19, 99 So.2d

8; State v. Kelly, 237 La. 956, 112 So.2d 674.

For the reasons assigned, the conviction and sentence are affirmed.

## On Rehearing

FOURNET, Chief Justice.

After affirming the conviction and sentence in this case we granted a rehearing, limited to a reconsideration of Bills of Exceptions Nos. 1, 2, 14 and 15.[1]

Bills Nos. 1 and 2 were reserved to the ruling of the Trial Judge sustaining the State's objection to questions propounded collectively to six veniremen tendered to the defense by the State on their voir dire examination. Counsel for defendant asked the prospective jurors—the fact having been previously brought out that the defendant was a colored man and the victim of the alleged rape a white woman—(1) if they were "in sympathy with an integration or segregation organizations," and (2) whether any of them belonged to any "religious or segregation groups." Following the first question, the District Attorney objected that while a prospective juror might be interrogated as to his prejudice against the particular individual accused, the question "could not take in the whole race or the whole people of an organization;" counsel for defendant stated that

1. Seventeen bills of exceptions were reserved to the rulings of the Trial Court.

the sole purpose was to determine the mental condition of the prospective jurors concerning the defendant; the Trial Judge sustained the objection (to which ruling Bill of Exception # 1 was reserved) and in his Per Curiam stated that the question was *irrelevant, was too general* for the answer to indicate prejudice against any individual; was confusing to the Court and the jurors and was an attempt to enlarge the scope of what could be considered legal prejudice or legal bias; and when the defendant's attorney propounded question (2) above, the Court ruled the question out, stating it was objectionable because the defense was trying to enlarge the scope of personal prejudice. In the Per Curiam to the Bill of Exception (No. 2) reserved to that ruling, the view was expressed that the same legal point was involved as in the first Bill and the Court asked that the reasons given in reply to the first Bill be considered as applying to and being made part of the second.

 It is a general view as to voir dire examination that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective juror so that he may exercise intelligently and wisely his right of peremptory challenge—since each party has

the right to put questions to a juror not only to show that there exists proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered. It is by examination into the attitudes and inclinations of jurors before they are sworn to try a case that litigants are enabled to reject those persons, by use of peremptory challenges where necessary, who are deemed to be unlikely to approach a decision in a detached and objective manner.[2] The Constitution itself (La.Const. of 1921, Art. 1, Sec. 10) guarantees to the accused the right to peremptorily challenge jurors, "the number of challenges to be fixed by law;" that number, in the trial of any crime for which the penalty is death or necessarily imprisonment at hard labor, is twelve (R.S. 15:354). The *intelligent* exercise of the right of rejection, by use of those twelve peremptory challenges, is the meat of the privilege, and can be substantially weakened by a restriction of ques-

2. 31 Am.Juris. 121, Verbo Jury, Sec. 139; 54 A.L.R.2d 1210 et seq.; State v. Higgs, 143 Conn. 138, 120 A.2d 152, 54 A.L.R. 2d 1199; Pendergrass v. State, 121 Tex. Cr. 213, 48 S.W.2d 997; 73 A.L.R. 1209, Anno. Juror, Racial or other Prejudice; People v. Car Soy, 1880, 57 Cal. 102; 50 C.J.S. Verbo Juries § 280, p. 1068.

tions—the answers to which might be regarded as informative of a juror's attitude and therefore of vital importance to his defense. In State v. Henry, 196 La. 217, 198 So. 910, 915, this Court quoted with approval from 35 C.J. at pages 387, 405 and 406; "'* * * parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, *within reasonable limits,* to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge, and * * * it is error for the court to exclude questions which are pertinent for either purpose. * * * The right of peremptory challenge is a substantial right, and its freest exercise should be permitted.' * *" (Emphasis supplied.)

■■■ Upon the facts revealed by the bills under discussion and the Per Curiam thereto, it is clear that the inquiry proposed in the instant case, though inartistically phrased, was a proper one, and we fail to discern anything in its nature that would warrant denial of the privilege of eliciting a reply as to membership in a segregation group or organization. Information as to affiliation with various associations is often sought by defense counsel [3] and while such membership does not necessarily disqualify one for service as a juror,[4] counsel have the right in good faith to ask jurors if they are members of organizations in order that defendant may make a more intelligent exercise of his right to challenge jurors peremptorily without cause, and thus promote the selection of a jury that is free from even an implied bias.[5] Membership in an organization advocating segregation of the races might be regarded as a proper notification upon which the defendant could wish to base a peremptory challenge.[6] In numerous cases refusal to allow counsel to so interrogate the jurors for the purpose of laying a foundation for peremptory

---

3. See comprehensive annotation, 158 A.L.R. 1361 et seq., "Membership in secret order or organization for the suppression of crime as proper subject of examination, or ground of challenge, of juror," supplementing 31 A.L.R. 411.

4. State v. Dunn, 161 La. 532, 109 So. 56, writ of error dismissed 273 U.S. 656, 47 S.Ct. 344, 71 L.Ed. 825.

5. For a good statement of the principle see Allen v. State, 28 Okl.Cr. 373, 231 P. 96; 158 A.L.R. at page 1365; and in Buchanan v. State, 33 Okl.Cr. 312, 243 P. 992, the Criminal Court of Appeals of Oklahoma aptly observed: "The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury. In conferring this right the law gives effect to the natural impulse to eliminate from the jury, not only persons who are rendered incompetent for some of the disqualifying causes named in the statute, but persons who by reason of politics, religion, environment, association, or appearance, or by reason of the want of information with reference to them the defendant may object to their service upon the jury, to which the disposition of his life or liberty is submitted."

6. See Wasy v. State, 234 Ind. 52, 123 N.E. 2d 462, 46 A.L.R.2d 1389.

challenge has been expressly denominated reversible error.[7]

The prejudicial ruling in such case is not cured by the fact (as stated in the Per Curiam) that at the time the above questions were disallowed, the defense had used only two peremptory challenges, and that prior to the trial of the cause twelve jurors were peremptorily excused by the defense. Counsel may have accepted, among the six veniremen tendered, jurors he would otherwise have challenged peremptorily, and he was therefore deprived of information to which he was entitled to enable him to exercise judiciously his right of peremptory challenge. The defendant is entitled to an impartial jury, and may make such inquiries as will enable him to secure that constitutional right; and while one may not be incompetent as a juror, yet he may hold views which, if known to the accused, would be deemed a good reason for use of a peremptory challenge. If defendant is blindly to make his peremptory challenges, he may strike from the panel the very men whom he would have wished

to retain, and retain those he woud have refused.[8]

Bill of Exception No. 14 was reserved to that part of the Court's general charge to the jury which covered the subject of flight, following defense counsel's objection that there was no element of flight in this case and therefore the Court's charge on the subject of flight was confusing and prejudicial to the defendant.[9]

The defendant was charged by indictment with aggravated rape, allegedly committed on the 28 of March, 1958; he was not arrested until the night of August 23, 1958, some five months later, on another complaint. Prior to August 23, 1958, no identity had been established for the assailant of the prosecuting witness; after defendant's arrest, he was in custody of the police and made no attempt to flee or escape justice. His defense to the charge in the instant case was mistaken identity. The Trial Court, in the Per Curiam to the Bill, asks "What is controlling in resolving the question of whether or not

7. See State v. Hoelscher, 217 Mo.App. 156, 273 S.W. 1098; Menefee v. State, 30 Okl. Cr. 400, 236 P. 439; and the numerous other citations forming a paragraph in 154 A.L.R. at page 1364.
8. See State v. Mann, 83 Mo. 589; 31 A.L.R. 413.
9. The charge objected to was given as follows: "Flight: The court charges you, gentlemen, that the flight of an accused, or escape, or attempt to escape, on the part of the accused, taken alone, does not raise a legal presumption of guilt.

The fact of an accused having fled, or having actually escaped from custody, if proved, are merely facts in the case to be taken into consideration by the jury in connection with probabilities for or against the guilt of the accused.

"Flight, or an attempt to escape may be prompted by a sense of guilt, but not necessarily so. If you find that the accused fled, or attempted to escape, or did escape, it is for you to consider what was the motive of the flight, or the attempt to escape, or the escape."

the accused fled? Is it a question of time? Must it be three years? Must it be five years?" and concludes: "In this case it certainly was an element, because the accused did flee from the scene and was not apprehended until some five months later. The Court felt it must include this phase, because it was supported by the evidence."

▬▬ The fact that a crime is committed on a certain date by a person whose identity is unknown, and that subsequently an individual is taken into custody and charged with the previously committed crime, affords no basis, of itself and in view of that individual's denial of identity with the person who committed the crime of which he stands accused, for a charge covering flight. The Court's statement that the accused "did flee from the scene and was not apprehended until some five months later" was apparently based on the assumption that the defendant is in fact the person who committed the crime—yet that question had not yet been submitted for determination by the jury. Since the police did not know the identity of the person whom they sought, for all that appears the accused may have been in the locality during the whole period; and the

fact that the accused was taken into custody on another complaint but in the general vicinity, several months after the commission of the assault here involved, suggests nothing in so far as flight is concerned. The situation (mentioned in the Per Curiam) of one charged as a fugitive from justice of another state who has never actually been in police custody is unlike the instant case in that the identity of such fugitive is known, and he may therefore be said to have fled the scene of the crime.[10]

▬▬ In a criminal case it is error to give an instruction which is not applicable to the crime charged and which is not borne out by the evidence.[11] The rule obtains that it is only where there is evidence of flight that the jury may be instructed properly to consider such flight as a circumstance tending to prove guilt in connection with the other circumstances in evidence; but that where there is no evidence of flight, it is error to instruct thereon.[12] In the instant case, in view of the absence of evidence showing any attempt, effort, or purpose on the part of the defendant to flee, the Court's instruction was highly prejudicial and sufficient in itself to cause a reversal, since the jury might well have

---

10. The Per Curiam states: "This Court suspects that counsel understands flight to be only where an actual escape from custody occurred, and completely disregarded the question of a person charged as a fugitive from another state, and who fights interstate rendition, and yet because the person had not been in actual

custody of the police, * * * you could never legally presume [he] resorted to flight or fled from the scene."

11. 53 Am.Juris. 454, Verbo Trial, Sec. 575.

12. 23 C.J.S. Verbo Criminal Law § 1220 Note 22(1), p. 780, and authorities cited therein.

concluded that the defendant must have fled from justice—else the Court would not have charged them on flight. The law is well settled, and has often been stated by this Court, that an instruction should not be given to a jury upon a theory to which the evidence affords no support.[13]

Bill of Exception No. 15 was reserved to the refusal of the trial judge to give the jury a requested special charge concerning the identity of the defendant.[14] The Per Curiam states that "the general subject matter had already been given in the general charge, and further, the said Special Charge was not wholly correct nor wholly pertinent, and moreover would require qualification, limitation and explanation," therefore did not meet the requirements of R.S. 15:390 concerning the duty of a judge to give requested charges. The Trial Court further states that the requested charge is misleading, seeks to give the impression that certain testimony conclusively showed a discrepancy in the prose-

cuting witness' description of the clothing worn by the assailant—but that such conclusion is unwarranted; and that the Court's refusal to give a special charge which would have to be corrected to be made applicable to the law and the facts was no error, citing State v. Poree, 136 La. 939, 68 So. 83.

The sole defense of the accused in this case was that he is not the man who committed the crime charged; and he contends that there was a lack of sufficient and reliable identification of himself as the assailant. A reading of the Court's general charge shows that the matter of identification was not covered or even referred to, yet it was exclusively within the province of the jury to determine whether the defendant was in fact the person charged with the crime. The Court's charge to the jury "must cover every phase of the case supported by evidence, whether accepted as true or not by the trial judge."

13. State v. Matthews (On Rehearing), 111 La. 962, 966, 36 So. 48; State v. Reed, 206 La. 143, 19 So.2d 28; State v. Cox, 167 La. 279, 119 So. 48; State v. Harris, 166 La. 759, 117 So. 820; see, also, State v. Rodosta, 173 La. 623, 138 So. 124.

14. That charge was: "The Court instructs the jury, that in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all of the testimony in the case, both that for the prosecution and that for the defendant, considering the means of identification; the circumstances under which he was identified, the opportunity for identifying the said defendant; the influence brought to bear on person claiming to identify the defendant; the description of his apparel as stated by the witness, and the probabilities or improbabilities that it was the defendant, and if after so judging and weighing the evidence, you are not satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense charged in this indictment, it will be your duty to find the defendant Not Guilty."

State v. Robichaux, 165 La. 497, at page 507, 115 So. 728, at page 731, citing State v. Tucker, 38 La.Ann. 789; State v. Irvine, 126 La. 434, 52 So. 567; State v. Atkins, 136 La. 844, 67 So. 926. To the same effect, see State v. Youngblood, 235 La. 1087, 106 So.2d 689. And from Marr's Criminal Jurisprudence of La. Vol. 2, pp. 1031 and 1028 respectively, " * * * When from the evidence the jury might reach a conclusion of fact favorable to accused, the judge should not limit his charge to his own conclusion upon such issue, but should give a special charge, if requested, on a theory favorable to accused;" and "It is his duty to charge upon every phase of the case made by the evidence, and where evidence is offered to prove a certain state of facts, and it is claimed that they are proved, he should, if requested, charge what the law is as applicable to the facts claimed to be proved, whether he believes or attaches any importance to this evidence or not, since it belongs to the jury alone to determine the weight and credibility of the evidence. * * * "

 Conceding, without deciding, that the Trial Judge was right in his conclusion that the requested charge as drawn was

not wholly correct and would require some modification, we think such a charge should be included in the main charge, since mistaken identity was the sole and only defense of the accused.

For the foregoing reasons, it is ordered that the conviction and sentence of the lower court be set aside and reversed, and that this case be remanded for a new trial in accordance with the views herein expressed.

HAMLIN and SUMMERS, JJ., dissent.

HAMITER, J., dissents—adhering to the reasons assigned on the original hearing.

On Rehearing

HAMLIN, Justice (dissenting).

I must respectfully dissent from the majority opinion on rehearing in this matter, for the reason that I feel that the original opinion, of which I was the author, correctly disposes of the issues presented by the Bills of Exceptions considered therein. I adhere to the reasons assigned in the original opinion.