578 So.2d 175 (1991)
STATE of Louisiana
v.
David M. BACON.
No. KA 900589.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 2, 1991.
*176 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge by Jesse Bankston, Asst. Dist. Atty., for plaintiff/appellee.
Theodore J. Adams, New Orleans, for defendant/appellant.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
GONZALES, Judge.
The defendant, David M. Bacon, was charged by grand jury indictment with second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. He received a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging seven assignments of error, as follows:
1. The trial court erred in denying the defendant's motion to suppress.
2. The trial court erred in allowing State Exhibits 13 through 18 to be admitted into evidence.
3. The trial court erred in allowing State Exhibits 1, 22, and 23 to be admitted into evidence.
4. The trial court erred in refusing to give requested jury instructions on justifiable homicide and mistake of fact.
5. The trial court gave an erroneous charge to the jury regarding second degree murder and manslaughter.
6. The trial court erred in denying the defendant's motion for post-verdict judgment of acquittal.
7. The trial court erred in denying the defendant's motion for new trial.
Assignments of errors numbers one and three were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On the evening of June 27, 1988, the victim, Leroy Thomas, went with a friend, Melvin Hampton, to another friend's home to watch a televised heavyweight fight. At approximately 11:00 p.m., after the fight ended, they left and drove to the victim's home in Hampton's vehicle, a white, Oldsmobile Toronado with a continental wheel kit on the back. At the same time, David M. Bacon (the defendant), Barney Ray Guy (the defendant's stepfather), Jerry Williamson, and others were returning to the Williamson home in Villa del Rey Subdivision after also watching this fight. On the way home, Williamson noticed Hampton's vehicle and remarked to his wife Debbie that it looked like "Richie's car." He also said that a friend of his previously had robbed Richie of some cocaine. Guy heard these comments and told the driver of their vehicle, Jackie Dudek (Debbie's girlfriend), to follow Hampton's vehicle. They followed it into Monticello Subdivision and watched it stop at the victim's residence. Guy suggested going into the victim's house to steal cocaine. However, the defendant and Williamson rejected this plan because there were women and children in their vehicle.
When they arrived home, Bacon, Guy, and Williamson decided to return to the victim's home and steal money and cocaine. *177 After arming themselves with a .22 rifle and a sawed-off, 12 gauge shotgun, they returned to the victim's home. When they arrived, the defendant went to the front door and rang the doorbell. There is conflicting evidence as to whether or not he took the 12 gauge shotgun with him to the front door. Guy went to the back door under the carport, armed with the .22 rifle. The victim opened the door leading to the carport and went outside. After approximately one minute, the victim's wife, Sandra Thomas, saw her husband and Guy struggling over the rifle. She retrieved a .38 pistol from her bedroom and shot Guy. The defendant then shot and killed the victim with the shotgun. Mrs. Thomas called the police as the defendant and his accomplices fled the scene. They took Guy to the home of Donnie Williamson, Jerry Williamson's brother. When they realized that Guy was seriously wounded and needed to get medical attention, Jerry Williamson and the defendant fled while Donnie Williamson called an ambulance. They went to Jerry Williamson's house and hid the shotgun in the attic before driving to New Orleans in an attempt to get some money from the defendant's mother. When the defendant's mother refused to cooperate, the defendant and Williamson fled to McComb, Mississippi, where they were subsequently arrested. It was later established that the defendant and his accomplices had mistaken Hampton's vehicle for a similar one owned by Richie McFarland, an alleged cocaine dealer.
At the trial, Jerry Williamson testified that the defendant was armed with the 12 gauge shotgun when he went to the victim's front door. However, the defendant denied this fact. He testified that the shotgun remained in the back seat of their vehicle until he heard the struggle between Guy and the victim and heard the shots fired by Mrs. Thomas. The defendant testified that he retrieved the shotgun from the back seat of the car, ran into the carport, and shot the victim. However, he explained that he panicked when he observed that his stepfather had been shot and that he did not mean to shoot the victim.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, the defendant contends that the trial court erred in allowing State Exhibits 13 through 18 to be admitted into evidence.
On September 29, 1988, defendant filed a motion to inspect, examine and test physical evidence. Because some items of physical evidence were at the State Police Crime Laboratory, the trial court granted the motion and stated that the prosecutor had a duty to allow the defense to inspect these items when they were released from the crime lab. On January 11, 1989, the State filed a supplemental answer to motion for discovery, which contained the State Police Crime Laboratory Scientific Analysis Report.
At the trial, when the State attempted to introduce into evidence State Exhibits 13-18, defense counsel objected on the basis that these items had not been tendered to the defense for inspection in accordance with the trial court's ruling. The prosecutor replied that, after the scientific analysis report had been supplied to the defense, the defense never asked to see these items of physical evidence. Defense counsel stated that he made such a request. However, when the trial court asked if the request had been in writing, defense counsel replied in the negative. The trial court then overruled the defendant's objection and allowed these items to be introduced into evidence.
In his brief to this Court, the defendant argues that, because he was not allowed to test these items of evidence, he was prevented from developing "certain defenses not otherwise available at trial." Elaborating on this contention, he states that he was "denied access to the seized weapons which may have been used to develop and corroborate a justification argument." However, he does not identify the "seized weapons" to which he refers in his brief. At trial, defense counsel's objection and argument were directed to State Exhibit 13 (the .22 rifle carried by Guy) and State Exhibit 14 (the .38 pistol which Mrs. Thomas *178 used to shoot Guy). Specifically, defense counsel argued that he would have tested these weapons for fingerprints in order to develop "the possibility of self-defense and other possible defenses available to my client."
The trial court's ruling, in effect, indicated that the defense should have given written notice to the State requesting an examination of these items once the defense received the scientific analysis report. We find no error in this ruling. Even assuming, arguendo, that the trial court's ruling was erroneous, any such error was harmless, since the defendant was neither surprised nor prejudiced by the introduction into evidence of these exhibits at the trial. See La.C.Cr.P. art. 921; State v. King, 563 So.2d 449, 454-455 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). Because the items contained in State Exhibits 13 through 18 were listed in the State Police Crime Laboratory Scientific Analysis Report, the defense was not surprised by the introduction into evidence of these items. Nor do we find that the defendant was prejudiced in any way by the inability to independently test and/or examine these items. Addressing the defendant's argument concerning State Exhibits 13 and 14, we reject the contention that any type of inspection or examination of these weapons could have suggested a defense of justification. As will be noted in assignment of error number four, no justification defense was possible under the facts of this case. The defendant, Guy, and Williamson armed themselves and went to the victim's house to rob him of money and/or cocaine. The evidence clearly established that State Exhibit 13 was the .22 rifle Guy carried to the victim's carport door and State Exhibit 14 was the .38 pistol Ms. Thomas used to shoot Guy. Even if the victim's fingerprints had been found on these two weapons, such evidence would not have supported self-defense or defense of others because the defendant, Guy, and Williamson were the initial aggressors. Accordingly, the trial court's ruling, allowing the admission into evidence of State Exhibits 13 through 18 over the defendant's objection, was correct.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, the defendant contends that the trial court erred in failing to give requested special jury charges on mistake of fact and justification.
The trial court shall give a requested special charge if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807. The trial court must charge the jury as to the law applicable to the case, if supported by the evidence, regardless of whether or not it accepts such evidence as true. Therefore, in response to an otherwise proper request, the trial court must charge the jury as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence. La.C.Cr.P. art. 802; State v. Marse, 365 So.2d 1319, 1323 (La.1978).
Unless there is a provision to the contrary in the definition of a crime, reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime. La.R.S. 14:16. The Louisiana Supreme Court has stated that "reasonable ignorance" will qualify as a defense but "unreasonable ignorance" will not. State v. Henderson, 296 So.2d 805, 807 (La.1974). Noting that he was prosecuted under the felony-murder provision of La.R.S. 14:30.1A(2) (specifically, a murder committed during an armed robbery attempt), the defendant argues that a jury charge on mistake of fact was warranted by the mistaken belief that the victim was a drug dealer. In other words, since the defendant and his cohorts believed that they were going to confront a drug dealer rather than the victim, such a mistaken belief precluded the finding of an intent to commit robbery. We reject this argument as ludicrous. Furthermore, an instruction on mistake of fact was not warranted *179 by the defendant's self-serving testimony that he accompanied the others to get back money allegedly owed to Guy or Williamson by the drug dealer. We find that the trial court correctly refused to instruct the jury on mistake of fact, as such a defense could not reasonably be inferred from the evidence.
A homicide is justifiable when committed in self defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La.R.S. 14:20(1). It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person. La.R.S. 14:22.
Relying on the above provisions, the defendant argues that he was entitled to a jury instruction on justification. Specifically, the defendant argues that he shot the victim in defense of his stepfather, Barney Ray Guy. However, this argument completely ignores the aggressor doctrine. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La.R.S. 14:21. Because Guy was the aggressor in this situation, the defendant was not entitled to kill the victim in defense of Guy. See La.R.S. 14:22; State v. Atkins, 136 La. 844, 67 So. 926, 927-928 (La.1915). See also State v. Corneille, 153 La. 929, 96 So. 813, 817 (La.1923). Therefore, the trial court did not err in refusing to charge the jury on justification or defense of others.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that, while giving further instructions to the jury on second degree murder and manslaughter, the trial court gave an erroneous charge regarding the applicability of "heat of passion" to second degree murder. However, the defendant did not object to the allegedly erroneous jury charge. Jury instructions are not errors patent and, absent a contemporaneous objection, a defendant may not complain of an allegedly erroneous jury charge on appeal. La.C.Cr.P. arts. 801, 841, and 920(2); State ex rel. Ross v. Blackburn, 403 So.2d 719, 721-722 (La.1981); State v. Singleton, 444 So.2d 343, 344-345 (La.App. 1st Cir. 1983).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIX:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La. App. 1st Cir.1984).
La.R.S. 14:30.1A provides, in pertinent part:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow *180 his act or failure to act. La.R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). Clearly, the evidence was sufficient to prove second degree murder. The fact that the defendant shot the victim in the head with a shotgun at a fairly short distance indicates a specific intent to kill or inflict great bodily harm. See La.R.S. 14:30.1A(1); State v. Navarre, 498 So.2d 249, 252 (La.App. 1st Cir.1986); State v. Price, 498 So.2d 244, 247 (La.App. 1st Cir.1986), writ denied, 503 So.2d 474 (La.1987). Also, the evidence established that this homicide was committed during an armed robbery attempt. See La.R.S. 14:30.1A(2).
In his brief to this Court, the defendant does not argue self-defense or mistaken identity. Instead, he contends that the evidence supported only a conviction of the responsive offense of manslaughter.
La.R.S. 14:31(1) provides:
Manslaughter is:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
Having found the elements of second degree murder, the jury then had to determine whether or not the circumstances indicated that the crime was actually manslaughter. The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the jury. Thus, the issue remaining is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986); State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). To the extent that conflicting testimony was involved herein, the instant guilty verdict indicates that the jury resolved such conflicts in favor of the State's witnesses. The guilty verdict also indicates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. Considering the fact that the defendant and his cohorts confected a plan to confront the victim (who they believed to be a drug dealer) at his home and rob him, and that they armed themselves with a rifle and a shotgun to carry out this plan, a rational trier of fact might well have concluded that the defendant acted with deliberation and reflection and not from the heat of passion at the time of the actual homicide. See State v. Ducksworth, 496 So.2d 624, 631 (La.App. 1st Cir.1986). See also State v. Maddox, 522 So.2d 579 (La.App. 1st Cir.1988).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of second degree murder and *181 that the mitigating factors were not established by a preponderance of the evidence.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SEVEN:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for new trial without a hearing.
After conviction, the defendant retained new counsel, who filed a motion for new trial on the basis of newly discovered evidence. Specifically, the motion alleged that Barney Ray Guy admitted that he, and not the defendant, killed the victim. The motion also alleged that such evidence would have affected the verdict. The defense complains that the trial court denied this motion without a hearing. However, in order to fully understand the circumstances herein, an exploration of the postverdict procedural history of this case is required.
The defendant was convicted on February 17, 1989. The trial court scheduled sentencing for April 28, 1989. On April 28, defense counsel requested a continuance. The trial court granted the motion and continued the matter to May 12, 1989. On May 12, defense counsel requested a continuance. Over the State's objection, the trial court granted the motion and continued the matter to June 30, 1989. On June 28, defense counsel filed a motion for postverdict judgment of acquittal; alternatively, motion for new trial. On June 30, the trial court deferred hearing on the motion and imposition of sentence to August 17, 1989.
On August 17, defense counsel requested that the matter be continued for a status conference on September 7, 1989. The trial court granted the motion. On September 7 the trial court ordered the matter passed without date. On October 11, 1989, the hearing on the motion and sentencing was rescheduled for October 27, 1989. On October 27, a newly retained attorney enrolled as co-counsel of record and the defense again requested a continuance. The State objected, noting that more than eight months had passed since the defendant's conviction. The trial court expressed a belief that the defense was guilty of dilatory tactics but granted a continuance to November 10, 1989.
On November 10, trial counsel argued the motion for post-verdict judgment of acquittal; alternatively, motion for new trial. The trial court denied this motion. Newly retained counsel then filed a second motion for new trial on the basis of newly discovered evidence (the instant motion), but explained that consideration of this motion would require the presence and testimony of Mr. Guy, who was absent. The trial court stated that it would allow no further dilatory tactics and rejected defense counsel's explanation about why Guy was not present at the hearing. The trial court then stated that all of the evidence in the case, including the defendant's own testimony, indicated that it was the defendant who shot and killed the victim, not Mr. Guy. The trial court pointed out that the defendant was armed with a shotgun, Mr. Guy was armed with a rifle, and there was no doubt that the victim was killed by a shotgun blast. The trial court then noted that Mr. Guy was "an habitual criminal and liar" and concluded that his testimony at the hearing "would be totally worthless." Thereafter, the trial court denied the second motion for new trial and scheduled sentencing for November 13, 1989.
Contrary to the defendant's argument, we find that the trial court did conduct a hearing on the second motion for new trial. The trial court concluded that this motion for new trial was meritless and stated that Mr. Guy's testimony in support of the motion was unnecessary. Considering the above circumstances, especially the numerous delays in these proceedings occasioned by the defense, we find no error in the trial court's ruling.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.